**Carrie Ann MONTERO,**
**Plaintiff–Appellant,**

v.

**AGCO CORPORATION, Glenn Carpenter, and Russ Newmann,**
**Defendants–Appellees.**

**No. 98–16806**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 12, 1999 [1]

Filed Sept. 28, 1999

---

**1.** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

858

David A. Prentice, McGuire & Prentice, Sacramento, California, for the plaintiff-appellant.

Benton J. Mathis, Jr., and Mary Anne Ackourey, Freeman Mathis & Gray, Atlanta, Georgia, for the defendants-appellees.

Before: DAVID R. THOMPSON and GRABER, Circuit Judges, and CARROLL,[2] District Judge.

GRABER, Circuit Judge:

In addition to filing several state law claims, Plaintiff filed a Title VII claim against her supervisors and her employer, alleging that she had been subjected to a sexually hostile work environment. The district court granted summary judgment in favor of Defendants on Plaintiff's Title VII claim and, accordingly, dismissed her state law claims without prejudice. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

"Because the district court granted summary judgment, we view the evidence in the light most favorable to the nonmoving party." *Christie v. Iopa,* 176 F.3d 1231, 1233 (9th Cir.1999).

In April 1993, defendant AGCO Corporation hired plaintiff Carrie Ann Montero to perform secretarial and clerical duties in its Parts Division Distribution Center, which is located in Stockton, California. During the relevant period, the Stockton facility had eight employees. Plaintiff was the only female employee there.

The Stockton facility's "Warehouse Manager" was defendant Glen Carpenter. Carpenter's immediate supervisor was Jamie Berk, the Parts Division Operations Manager, who was located at the Parts

**2.** The Honorable Earl H. Carroll, Senior United States District Judge for the District of Arizona, sitting by designation.

Division's headquarters in Batavia, Illinois. Defendant Russ Newmann was the Stockton facility's "Warehouse Supervisor."[3] Newmann reported directly to Carpenter. Robert Weeks worked in the warehouse at the Stockton facility in a non-supervisory capacity.

On Thursday, March 16, 1995, Plaintiff contacted Karin Rudin, AGCO's Human Resources Manager for the Parts Division, and complained that she had been sexually harassed and subjected to a hostile work environment. On Monday, March 20, 1995, Rudin and Berk met with Plaintiff. At that meeting, Plaintiff stated that Carpenter, Newmann, and Weeks had subjected her to offensive and unwanted sexual behavior, both verbal and physical.

Specifically, Plaintiff claimed that Carpenter had called her a "butt-kiss," used foul language around her, told her that he was going to spank her, rested his chin on her shoulder while she worked, grabbed her arms until she said "ouch," and frequently stood on one leg, grimaced, and threatened to pass gas.

Plaintiff complained that Newmann had frequently made remarks of a sexually suggestive nature, made sexually suggestive gestures, grabbed his crotch while speaking with her, placed his face on her bottom, told her that he had sexual dreams about her, put mice and bugs on her desk, asked if he could sit under her desk, spat water at her, put his hands in the air as if he were going to grab her breasts, posted "pin-ups" on his desk, put his hand on her chair as she sat down, attempted to bite her neck, and knelt in front of her and tried to put his head between her knees.

Plaintiff stated that Weeks had pulled her pants up from behind by the belt loop, openly passed gas, commented about the small size of his penis, and placed notes on her desk telling her to dance naked on the desk or to take off her clothes.

At the March 20 meeting, Plaintiff also told Rudin that Carpenter, Newmann, and Weeks had ceased to display sexually inappropriate conduct by December 1994, that is, about four months earlier. Additionally, Plaintiff said that she had not confronted Carpenter or Newmann before contacting Rudin, because she was not a confrontational person and was afraid of losing her job. Rudin agreed to place Plaintiff on paid administrative leave during the investigation, which Rudin anticipated would be completed by Monday, March 27, 1995.

Also on March 20, 1995, after meeting with Plaintiff, Rudin and Berk met with Carpenter, Newmann, and Weeks, as well as with other employees at the Stockton facility. Carpenter admitted that most of what Plaintiff had said was true. Newmann admitted that he had used foul language and sexual innuendo and had engaged in some "joking around." Newmann, however, denied most of Plaintiff's other allegations against him. Weeks admitted that he had used foul language, joked about passing gas, and snapped Plaintiff's belt loop.

On Thursday, March 23, Rudin telephoned Plaintiff to clarify the timing of certain instances of misconduct by Carpenter, Newmann, and Weeks. During that conversation, Plaintiff advised Rudin that she would not be at work on Monday, March 27, because her doctor did not want her to return until she had seen a psychologist.

On the morning of Monday, March 27, Rudin fired Carpenter and held disciplinary conferences with Newmann and Weeks. Around noon on the same day, Plaintiff called Rudin and advised her that she had yet to see a psychologist, because the psychologist whom she was to see was ill. Plaintiff asked if Carpenter and Newmann were still employed at the Stockton

---

3. The parties dispute whether Carpenter and Newmann were Plaintiff's supervisors. As noted, we must construe the facts in Plaintiff's favor and assume that Carpenter and Newmann were Plaintiff's supervisors.

facility. Rudin told Plaintiff that appropriate disciplinary measures had been taken but that she would not discuss them with specificity, because the disciplinary process was confidential. Rudin also told Plaintiff that all the employees had been strongly warned that the company would not tolerate any retaliation against Plaintiff for complaining of conduct that she found inappropriate.

On Wednesday, March 29, 1995, Plaintiff provided AGCO with documentation from her psychologist, stating that she would not be able to return to work until April 13, 1995. Subsequently, Plaintiff's psychologist extended Plaintiff's return-to-work day to July 15, 1995.

On July 17, 1995, Plaintiff's lawyer wrote to AGCO and informed it of Plaintiff's resignation. In response, Rudin wrote to Plaintiff, urging her to reconsider leaving her job and informing her that AGCO had hired a new manager for the Stockton facility, Ms. Shirley Batalla, who was committed to ensuring that all employees were treated fairly and appropriately.

On September 10, 1996, Plaintiff filed a complaint in district court. She alleged various state law claims and alleged that she had been subjected to a sexually hostile work environment in violation of Title VII. On August 12, 1998, the district court granted AGCO's motion for summary judgment on Plaintiff's Title VII claim and dismissed Plaintiff's state law claims without prejudice. The district court held that Plaintiff's employer had established an affirmative defense to liability by establishing (1) that it exercised reasonable care to prevent and to correct promptly any sexually harassing behavior and (2) that Plaintiff unreasonably had failed to take advantage of preventive and corrective opportunities provided by her employer.

## STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment. *See Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). We must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.* The court must not weigh the evidence, but only determine whether there is a genuine issue for trial. *See Dodd v. Hood River County*, 136 F.3d 1219, 1224 (9th Cir.1998).

## ANALYSIS

■ Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The scope of Title VII's prohibition is not limited to "economic" or "tangible" discrimination. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). Title VII also is violated if sexual harassment is so "severe or pervasive" as to " 'alter the conditions of [the victim's] employment and create an abusive working environment.' " *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 118 S.Ct. at 2284. To be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 2283. For purposes of deciding this appeal, we assume that Plaintiff was subjected to actionable sexual harassment by Carpenter and Newmann.[4]

---

4. Plaintiff does not claim here, and did not    assert below, that AGCO is liable for co-work-

**A. Claims Against AGCO for Supervisors' Sexually Harassing Conduct**

In *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), and *Faragher,* 118 S.Ct. at 2292–93, the Supreme Court held that

> [a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

(Citation omitted.)

▆▆ Under the rule set forth in those cases, we first must determine whether Plaintiff suffered a tangible adverse employment action, because "[n]o affirmative defense is available ... when [a] supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Indus.,* 118 S.Ct. at 2270. Plaintiff claims that she suffered a tangible employment action, because she was constructively discharged. She argues that a reasonable person in her circumstances would have felt forced to leave AGCO. *See Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 (9th Cir.1994) (holding that, to survive a motion for summary judgment, a plaintiff "must show that there are triable issues of fact as to whether 'a reasonable person in [the plaintiff's] position would have felt that [the plaintiff] was forced to quit because of intolerable and discriminatory working conditions.' ") (quoting *Thomas · v. Douglas,* 877 F.2d 1428, 1434 (9th Cir.1989)).

We need not decide whether a constructive discharge can be a "tangible employment action" for the purpose of a *Faragher* analysis, because Plaintiff was not constructively discharged. By the time Plaintiff resigned she was not subject to intolerable working conditions. In her deposition, plaintiff testified that Newmann's sexually harassing behavior had ceased three to four months before she left AGCO. *See Steiner,* 25 F.3d at 1465 (affirming the district court's dismissal of an employee's constructive discharge claim, when the employee resigned two and one-half months after the harassment had ceased). Additionally, Plaintiff did not resign until after AGCO had fired and replaced Carpenter and had reprimanded Newmann and Weeks. Moreover, there was no reason to believe that the new (female) manager would not ensure that Newmann and Weeks did not harass Plaintiff further. Finally, after her complaint to AGCO's upper management resulted in the firing of one supervisor and the disciplining of another, Plaintiff knew that the company would take any other complaint seriously. Given those considerations, Plaintiff was not constructively discharged, because no reasonable person in Plaintiff's position would have felt forced to quit when she did.

▆▆ Because Plaintiff was not subjected to a tangible employment action, AGCO may avail itself of the *Faragher* affirmative defense to vicarious liability for Carpenter's and Newmann's sexually harassing behavior. The first prong of that defense requires AGCO to show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher,* 118 S.Ct. at 2293. AGCO met that requirement here.

er Weeks' actions.

First, AGCO had a policy prohibiting sexual harassment, during the period when Carpenter and Newmann were sexually harassing Plaintiff. *See id.* ("While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense."). The policy (1) provides a definition of sexual harassment, (2) identifies whom employees should contact if they are subjected to sexual harassment, (3) describes the disciplinary measures that the company may use in a harassment case, and (4) provides a statement that retaliation will not be tolerated.[5]

Plaintiff acknowledged that, when she was hired, she received an employee handbook containing a copy of AGCO's policy against sexual harassment, as well as a separate memorandum describing that policy. Plaintiff also testified that two other pamphlets regarding AGCO's policy against sexual harassment were distributed while she worked for AGCO. AGCO's policy and its efforts to ensure that all employees were aware of the policy establishes that AGCO exercised reasonable care to *prevent* sexual harassment in its workplaces.

The first prong of the *Faragher* affirmative defense also requires AGCO to establish that it exercised reasonable care to *correct promptly* sexually harassing behavior. AGCO did so.

On Thursday, March 16, 1995, Plaintiff contacted Rudin, AGCO's Human Resources Manager, and complained that she had been sexually harassed and subjected to a hostile work environment. That very weekend, on Sunday, March 19, Rudin and Berk flew from Illinois to California to investigate Plaintiff's allegations. On Monday, March 20, Rudin and Berk interviewed Plaintiff, Carpenter, Newmann, Weeks, and other employees at the Stockton facility. On Thursday, March 23, Rudin contacted Plaintiff and other employees for additional information. On Monday, March 27, Rudin terminated Carpenter and disciplined Newmann and Weeks. Rudin also met with all the Stockton facility's employees and made clear that the company would tolerate no retaliation against Plaintiff. Shortly thereafter, the company also hired a new manager for the Stockton facility.

---

**5.** AGCO's policy against sexual harassment provides:

It is the policy of AGCO Corporation to maintain a work environment free from unlawful discrimination for all employees. Sexual harassment is unacceptable conduct which violates this policy.

Sexual harassment encompasses a wide range of unwanted, sexually directed behavior and has been defined in the following manner:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute harassment when:

1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment.

2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or

3) such conduct has the purpose or effect of unreasonable interference with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Sexual harassment applies to the conduct of a supervisor toward a subordinate, an employee toward another employee, a non-employee toward an employee or an employee toward an applicant for employment. Sexual harassment can apply to conduct outside the workplace as well as at work. Employees who wish to register a complaint may do so through the Human Resources Department or their supervisors.

Allegations of sexual harassment will be investigated thoroughly. The facts will determine the response to each allegation. Substantiated acts of sexual harassment will be met with appropriate disciplinary action up to and including termination. All information regarding any specific incident will be kept confidential within the necessary boundaries of the fact-finding process, and no reprisals against the employee reporting the allegation of sexual harassment will be tolerated.

From the time Plaintiff complained, it took AGCO only 11 days to complete its investigation and take action to *address* Plaintiff's complaint in a decisive and meaningful fashion. AGCO thereby exercised reasonable care to "correct promptly" sexually harassing behavior at the Stockton facility. AGCO successfully established the first prong of the *Faragher* affirmative defense.

■ The second prong of the *Faragher* affirmative defense requires that the "plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 118 S.Ct. at 2293. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.*

■ As noted above, Plaintiff knew about AGCO's policy prohibiting sexual harassment and had received several copies of it. She also knew whom to contact if she was being subjected to sexual harassment. Plaintiff had met Rudin in person and had talked with her over the telephone several times before making her complaint. Although Plaintiff claimed that Carpenter and Newmann began sexually harassing her shortly after she began working at AGCO's Stockton facility in April 1993, she waited almost two years to complain to AGCO's Human Resources Department. When Plaintiff finally complained, AGCO's response was swift and certain. Therefore, AGCO successfully established the second prong of the *Faragher* defense by showing that Plaintiff unreasonably failed to take advantage of the company's preventive and corrective opportunities earlier, although she knew of their existence.

■ Plaintiff argues that, even if AGCO successfully established both prongs of the *Faragher* affirmative defense, that defense is not applicable here. Plaintiff contends that, because Newmann and Carpenter were the only two AGCO Parts Distribution supervisors in California, their actions should be deemed actions of the company *per se,* and not those of typical supervisors. Plaintiff argues that, under *Faragher,* AGCO is vicariously liable for Carpenter's and Newmann's sexually harassing behavior, because they were "granted unchecked authority over their subordinates and ... those subordinates were in all practicality isolated from higher management personnel."

In *Faragher,* the Court held that a city was liable for its supervisors' sexually harassing behavior when those "supervisors were granted virtually unchecked authority over their subordinates, directly controll[ing] and supervis[ing] all aspects of [the employee's] day-to-day activities ... [and the employees] were completely isolated from the [employer's] higher management." 118 S.Ct. at 2293 (some alterations in original, some alterations added; citation and internal quotation marks omitted). The city had "entirely failed to disseminate its policy against sexual harassment among [its] employees and ... its officials made no attempt to keep track of the conduct of supervisors." *Id.* Nor did the city's policy prohibiting sexual harassment include "any assurance that the harassing supervisors could be by-passed in registering complaints." *Id.* The Court found those factors important:

> Unlike the employer of a small workforce, who might expect that sufficient care to prevent tortious behavior could be exercised informally, those responsible for city operations could not reasonably have thought that precautions against hostile environments in any one of many departments in far-flung locations could be effective without communicating some formal policy against

harassment, with a sensible complaint procedure.

*Id.*

Although AGCO's Stockton facility might be considered "isolated" from the company's higher management in Illinois, that is where any similarity between *Faragher* and this case ends.[6] Here, as discussed above, AGCO effectively distributed its policy prohibiting sexual harassment to its employees, including Plaintiff. That policy had a sensible complaint procedure that did not require an employee to go to an offending supervisor. Plaintiff knew that she did not need to complain first to either Carpenter or Newmann before complaining to AGCO's Human Resources Department. Moreover, Plaintiff was personally familiar with those who were working in the Human Resources Department, and she never has claimed that they were unapproachable in any way.

We hold that AGCO is not precluded from asserting the *Faragher* affirmative defense simply because Carpenter and Newmann were the only AGCO Parts Distribution supervisors in California. Because Plaintiff failed to establish that she suffered a tangible adverse employment action, and because AGCO successfully established an affirmative defense to liability, the district court properly granted summary judgment to AGCO.

B. *Claims Against Plaintiff's Supervisors in their Individual Capacities*

In her opening brief, Plaintiff does not appeal from the district court's dismissal of her Title VII claims against Carpenter and Newmann. Therefore, any argument that the district court erred in granting summary judgment to Carpenter and Newmann on Plaintiff's Title VII claims is not properly before us. *See Trajano v.*

*Marcos (In re Estate of Ferdinand E. Marcos Human Rights Litig.)*, 978 F.2d 493, 495 n. 2 (9th Cir.1992) (holding that, if an issue is not raised in the appellant's opening brief, it is waived).

AFFIRMED.

---

6. It also should be noted that the "isolation" present in this case is significantly different than that present in *Faragher*. Here, Plaintiff was geographically isolated from AGCO's higher management. In *Faragher*, the plaintiff was not geographically isolated but, rather, the defendant's organizational structure prevented the plaintiff from complaining directly to higher management about the sexual harassment to which her supervisors had subjected her.