UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VENEAL WILLIAMS,

<u>Plaintiff-Appellant,</u>

v.

SPARTAN COMMUNICATIONS,

No. 99-1566

INCORPORATED; MITCHELL MAUND,
individually and as an employee
and servant of Spartan
Communications, Incorporated,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
William M. Catoe, Jr., Magistrate Judge.
(CA-97-2030-7-13AK)

Argued: February 29, 2000

Decided: March 30, 2000

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and Robert E. PAYNE, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Reversed by unpublished opinion. Judge Motz wrote the majority
opinion, in which Judge Payne joined. Chief Judge Wilkinson wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** James Gordon Carpenter, JAMES G. CARPENTER,
P.C., Greenville, South Carolina, for Appellant. Kristofer Karl

Strasser, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellees. **ON BRIEF:** Jennifer J. Miller, JAMES G. CARPENTER, P.C., Greenville, South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Veneal Williams sold advertising from 1989 to 1995 for Spartan Communications, Incorporated, which runs a television station in Spartanburg, South Carolina. Her immediate supervisor was Local Sales Manager Mitchell Maund, who was promoted to that position in 1992. Williams alleges that between 1992 and 1995 Maund sexually assaulted her three times during business trips that the two took together. The second assault assertedly occurred in Williams' van, while the two were watching an R-rated movie rented on Maund's instructions.

On May 24, 1995, Williams reported Maund's assaults to Spartan General Sales Manager Greg Rose and Spartan Personnel Manager Donna Groothedde. Maund was out of town that day, but Rose, Groothedde and Spartan Vice President and General Manager Jack West met with him the following day, May 25. At that time, Maund admitted to renting and watching the movie in Williams' van. That afternoon, Maund, Rose, Groothedde, and West met again; as a result of Maund's admitted rental of the movie, he resigned. Maund received five months severance pay in return for releasing Spartan from liability for his dismissal. Due to the distress of continued sexual harassment, Williams left her job with Spartan and is now unemployed and in counseling.

After filing charges with the EEOC, Williams initiated this action. A magistrate judge granted summary judgment to Spartan (but not

2

Maund). Subsequently, the judge certified the case for immediate appeal pursuant to Rule 54(b) and Williams noted this appeal. Contrary to Spartan's suggestion, the notice of appeal was timely, see 28 U.S.C. § 1291, and the Rule 54(b) certification proper. See Fox v. Baltimore City Police Dept., 201 F.3d 526 (4th Cir. 2000). Accordingly, we turn to the merits of the case.

We agree with Spartan that Williams has failed to allege or offer competent evidence that she suffered any tangible employment action at the hands of Spartan management. Although her complaint captions Count One as a "claim for quid pro quo sexual harassment," in fact it contains no allegations supporting such a claim. Moreover, in deposition Williams responded "not that I recall" to the question, "in terms of work did he [Maund] ever retaliate against you in any way?" Williams further conceded at her deposition that she did not receive negative evaluations, warnings, or reprimands from Maund and that he never changed her accounts in any retaliatory way. Williams later filed an affidavit stating that actually Maund had twice "passed [her] over for promotions." The magistrate judge rejected the affidavit, reasoning that a "plaintiff may not create an issue of fact by submitting an affidavit that is inconsistent with prior deposition testimony." See Rohrbough v. Wyeth Laboratories, 916 F.2d 970, 975 (4th Cir. 1990). We review the judge's decision as to whether to credit such an after-the-fact affidavit for abuse of discretion, Shaw v. Stroud, 13 F.3d 791, 804 (4th Cir. 1994), and find no abuse here. See Rohrbough, 916 F.2d at 976.

The final issue in this case is whether Spartan has established, as a matter of law, its entitlement to an affirmative defense to Williams' hostile environment claim. The Supreme Court has explained that "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense" to a claim of "vicarious liability . . . for an actionable hostile environment created by a supervisor with immediate . . . authority over the employee." Faragher v. Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998). To do so an employer must demonstrate by the "preponderance of the evidence" that (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by

3

the employer or to avoid harm otherwise." Id. The magistrate judge held that Spartan had satisfied both elements of the affirmative defense as a matter of law and so granted the company summary judgment.

We believe that this ruling was error. We need only discuss the first prong of the defense--whether Spartan has established, as a matter of law, that it "exercised reasonable care to prevent and correct promptly" the sexually harassing behavior.

The magistrate judge found that the following evidence demonstrated that Spartan had indisputably satisfied this prong: (1) Williams admitted that she knew of Spartan's anti-harassment policy, had attended a meeting at which it was discussed, and saw a posted notice of it, which identified persons to whom she could report improper conduct, and (2) Spartan forced Maund to resign as soon as it learned of Williams' allegations.

This rationale fails to recognize that while the existence of an anti-harassment policy and prompt corrective action pursuant to it provides important evidence that an employer has acted to meet the first prong of the affirmative defense, such evidence does not compel this conclusion. Rather, any anti-harassment policy offered to satisfy the first prong of the Faragher-Ellerth defense must be "both reasonably designed and reasonably effectual." Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999). Moreover, a prompt response to complaints of harassment made pursuant to a policy banning harassment does not necessarily establish the first prong of the affirmative defense. See, e.g., Jackson v. Quanex Corp., 191 F.3d 647, 664-65 (6th Cir. 1999).

The magistrate judge also entirely ignored substantial relevant evidence submitted by Williams that could lead a factfinder to conclude that Spartan's anti-harassment policy was not an effective preventive program. This evidence included: (1) Maund's deposition testimony that he received no training on sexual harassment and did not even recall any specific discussion of the anti-harassment policy; (2) senior Spartan management's toleration of and participation in lewd conversations and publication of sexually explicit jokes and cartoons in the workplace; (3) evidence that an employee's complaint to a Spartan manager about foul language and sexist jokes in the workplace pro-

4

duced no corrective action; (4) General Sales Manager Rose's comment that a secretary had been fired because "she didn't give him a blow job"; (5) Vice President and General Manager West's remark to male managers looking at female participants in a management training function, "Boys, I've stepped over better than that just to jack off"; (6) General Sales Manager West's comment after a sexual harassment training meeting, "does this mean we can't fuck the help any more"; (7) the close relationship between Maund (the alleged harasser) and West, Rose, and other senior managers at Spartan; and (8) the anti-harassment policy's failure, in contravention of EEOC guidelines, to assure those reporting harassment that they would not be subject to retaliation, particularly when the policy provided that "[a]n employee who in bad faith falsely accuses another employee of harassment will be subject to disciplinary action up to and including termination."

In Faragher, the Supreme Court found a city was vicariously liable for harassment by lifeguard supervisors, despite the existence of a sexual harassment policy, when the plaintiff beach employees were "completely isolated from the City's higher management" and the city "failed to disseminate its policy against sexual harassment among the beach employees." 524 U.S. at 808. In Smith v. First Union National Bank, 202 F.3d 234, 245 (4th Cir. 2000), we held that even though the employer's anti-harassment policy had been disseminated to employees it did not demonstrate, as a matter of law, that the employer had satisfied the first prong of the Faragher defense because the policy referred only to sexual conduct and was read by the plaintiff not to include non-sexual, gender-based harassment. We also emphasized that "[e]mployers cannot satisfy the first element of the Faragher-Ellerth affirmative defense if its management-level employees are discouraging the use of the complaint process." Id.

Here Spartan disseminated an anti-harassment policy which failed to provide that complainants would be free from retaliation, and yet warned that false reports of harassment would subject a complainant to disciplinary action, "including termination." Although these features do not, in themselves, render the policy ineffective, when considered in conjunction with the conduct of most senior Spartan management, a policy with such features could be found to be ineffective. The outrageous comments by Vice President and General Man-

5

ager West ("does this mean we cannot fuck the help anymore") and General Sales Manager Rose (a secretary was terminated because "she didn't give him a blow job") suggest not only that a complaint made pursuant to this anti-harassment policy might fall on deaf ears, but also that such a complaint might cause the complainant's termination. Indeed, Williams produced evidence that a Spartan employee decided not to complain of harassment because of fear of being fired. The long and close personal relationships between those managers who made the denigrating comments, West and Rose, and the alleged harasser, Maund, were so well known that several of the witnesses described them as members of the "Augusta Boys Club." Given these relationships, a factfinder could conclude that a complaint about Maund would receive a particularly skeptical response from Spartan management.

We note that Spartan's policy states that "[a]ny employee who feels they are being subjected to any form of harassment in violation of this policy should bring their complaint to the attention" of one of four members of management: "[1] the[ ] immediate supervisor, [2] the General Manager, [3] the appointed liaison, or[4] the Manager of Corporate Human Resources." Providing an employee recourse to multiple members of management is commendable. But Williams produced evidence that could lead a factfinder to determine that the extra protection seemingly afforded by this provision was illusory in her case. This is so because one of the four suggested recipients of harassment complaints was the harasser himself, Maund; another was his good friend, Vice President and General Manager West (the source of the "does this mean we can't fuck the help any more" and the "I've stepped over better than that just to jack off" remarks); and the remaining two managers reported to West, the General Manager of the station and Vice President of the entire company. Thus, the conduct of Spartan's senior management could be found to have isolated Williams from effective channels of complaint. See Faragher, 524 U.S. at 808. A factfinder could conclude that the language in the anti-harassment policy together with the conduct of Spartan's most senior management "discouraged complaining about a supervisor's harassing behavior." Smith, 202 F.3d at 245.

This is not to say that Williams has demonstrated that Spartan cannot establish the first prong of Faragher's affirmative defense. A fact-

6

finder may well ultimately conclude that Spartan's anti-harassment policy and prompt corrective action do establish this prong. However, we believe that when Williams' evidence is considered in the light most favorable to her, see Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986), Spartan has not established the first prong as a matter of law. For these reasons, we reverse the district court's grant of summary judgment to Spartan.

REVERSED

WILKINSON, Chief Judge, dissenting:

I agree with the district court that Spartan Communications has established both prongs of the affirmative defense under Faragher and Ellerth. I would therefore uphold the grant of summary judgment.

The majority properly holds that Veneal Williams failed to demonstrate that she suffered any tangible employment action by Spartan management. Spartan may thus raise an affirmative defense to vicarious liability by showing (1) that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that Williams "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998). Spartan has met its burden of proving both of these elements by a preponderance of the evidence.

As to the first prong of the defense, Spartan exercised reasonable care to prevent and correct the sexually harassing behavior that Williams reported. Spartan put in place a strong anti-harassment policy that states the "working environment should be free of intimidation and harassment." The policy defines and prohibits sexual harassment and encourages employees to come forward with complaints. A complaint may be reported to any one of at least four different people, including the department head, general manager, appointed EEO liaison, and the manager of corporate human resources. Williams admits that she was aware of this policy. She attended a meeting at which the policy was discussed by the corporate personnel director and saw a posted notice prohibiting sexual harassment and identifying various

7

persons to whom she could report any improper conduct. Spartan also took swift action to correct the alleged harassment. When Williams finally reported Maund's inappropriate behavior, Spartan immediately conducted an investigation and asked Maund to resign only two days after receiving Williams' complaint.

Though the existence of an anti-harassment policy is not sufficient to satisfy the first part of the affirmative defense, the policy here is "both reasonably designed and reasonably effectual." Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999). The majority attempts to discredit the effectiveness of the policy by referring to lewd statements by management and to the fact that Spartan's policy did not contain an explicit anti-retaliation provision. Yet the majority does not assert that the policy was ineffective when complaints were reported or that Spartan had retaliated against any employee who made a complaint. There is simply "no evidence that [the] employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." Id. There is only the evidence that Spartan immediately terminated Maund when it learned of his misconduct. Because it had an effective policy, Spartan has satisfied the first part of the affirmative defense.

The majority's litany of crude remarks attributed to management does not undermine Spartan's affirmative defense. It is a rare case when some remarks could not be dredged up or alleged in order to challenge management's reasonableness. The affirmative defense focuses not on remarks, however, but on the conduct of employers and employees in preventing and addressing sexual harassment complaints. See Ellerth, 524 U.S. at 764-65. A collection of off-hand remarks unrelated to the harassment simply does not preclude Spartan from establishing the first prong of the affirmative defense on summary judgment. Indeed, the remarks related by the majority were not directed toward Williams. She was not even present when most of them were made. While no one would approve of the comments, Title VII is not intended to allow courts to act as censors of workplace speech or impose a general workplace civility code. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998).

As to the second prong of the defense, Williams failed to take advantage of the opportunities provided by Spartan to avoid the sexual harassment. "[A] demonstration of such failure will normally suf-

8

fice to satisfy the employer's burden under the second element of the defense." Faragher, 524 U.S. at 807-08. In Montero v. Agco Corp., the Ninth Circuit held that where the plaintiff knew about the company's policy, knew whom to contact with harassment complaints, and yet waited almost two years to report the harassment, the company "successfully established the second prong of the Faragher defense" and was entitled to judgment as a matter of law. 192 F.3d 856, 863 (9th Cir. 1999). Similarly, Williams knew about Spartan's policy, knew whom to contact with grievances, and yet waited three years to report the harassment. During this time, plaintiff was allegedly assaulted twice more, once while watching an R-rated movie in her van with Maund and again while with Maund in her hotel room. Faragher and Ellerth encourage employees to report such conduct precisely to avoid continued harassment. See Faragher, 524 U.S. at 806-07; Ellerth, 524 U.S. at 764-65. Spartan has established that Williams unreasonably failed to take advantage of the company's preventive and corrective measures. Williams "should not recover damages that could have been avoided if she had done so." Faragher, 524 U.S. at 806-07.

By denying summary judgment in a case where the affirmative defense has been clearly established, the majority simply indicates an aversion to the Supreme Court's mandate in Faragher and Ellerth. In doing so, the majority creates the worst of all possible worlds. Despite the existence of a reasonable and effective complaint procedure, the employee continues to be harassed for nearly three years because no misconduct was reported. The company in turn has no opportunity to rectify unacceptable behavior. Such an outcome is the antithesis of Title VII's primary objective, which is "not to provide redress but to avoid harm." Faragher, 524 U.S. at 806. The Supreme Court has explained that employer liability is limited to encourage the creation of effective anti-harassment policies and also to "encourage employees to report harassing conduct before it becomes severe or pervasive." Ellerth, 524 U.S. at 764. Spartan attempted to prevent and acted to correct sexually harassing behavior. It should not be held liable when an employee fails to use the available channels for reporting harassment. As this court stated in Brown, "The law requires an employer to be reasonable, not clairvoyant or omnipotent." 184 F.3d at 396.

I would affirm the judgment.

9