PAEZ, Circuit Judge,
dissenting in part:
I agree that the district court properly granted summary judgment on Hardage’s constructive discharge and retaliation claims, and that Hardage did not raise a *1190 triable issue of fact as to whether he suffered a tangible employment action. I cannot agree, however, with the majority’s conclusion that CBS established as a matter of law the Faragher/Ellerth defense to vicarious liability for Sparks’ sexual harassment. In reaching its conclusion, the majority departs from well-settled case law requiring an employer to conduct an investigation and take prompt corrective action once it is on notice of alleged harassment. Because a reasonable jury readily could find that CBS is vicariously liable for sexual harassment, I would reverse the grant of summary judgment and remand for a trial. Accordingly, I dissent from Parts III.B and III.C of the majority’s opinion.
To establish the Faragher/Ellerth affirmative defense, an employer must prove by a preponderance of the evidence two necessary elements:
(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). An employer is not entitled to summary judgment on this issue unless there are no genuine disputes of material fact as to either element of the defense. That is, summary judgment must be denied if a rational jury could conclude either that (1) the employer failed to exercise reasonable care to prevent and promptly correct any sexually harassing behavior, or that (2) the employee did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Here, the record reveals genuine factual disputes as to both elements.
1. Whether CBS Acted Reasonably to Prevent and Correct the Harassment
It is well-established that “[njotice of the sexually harassing conduct triggers an employer’s duty to take prompt corrective action that is reasonably calculated to end the harassment.” Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir.2001) (internal quotation marks omitted). The reasonableness of the remedy depends on the employee’s ability to stop the harassment and to deter potential harassers, as well as the promptness of the response. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1120 (9th Cir.2004). Once an employer is on notice of a sexual harassment complaint, it must conduct an investigation. Swenson, 271 F.3d at 1193. An employer’s remedial “obligation actually has two parts. The first consists of the temporary steps the employer takes to deal with the situation while it determines whether the complaint is justified. The second consists of the permanent remedial steps the employer takes once it has completed its investigation.” Id. at 1192.
Contrary to our case law, the majority holds that an employer’s response to a harassment complaint may be deemed reasonable as a matter of law even though the employer conducted no investigation and took no action to address the harassing behavior. The majority relies on our statement in Swenson that “we consider the overall picture” in determining the adequacy of the employer’s response to a harassment complaint. Id. at 1197. In Swenson, however, we never suggested that an investigation was not required. In fact, we specifically stressed the importance of an investigation, stating:
The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch *1191 a prompt investigation to determine whether the complaint is justified. An investigation is a key step in the employer’s response, and can itself be a powerful factor in deterring future harassment. By opening a sexual harassment investigation, an employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace. An investigation is a warning, not by words but by action.
Id. at 1193 (citation omitted).
In Swenson, we held that the investigation conducted by the employer was competent. We noted, however, that even if the investigation were “less than perfect,” the employer’s response was reasonable in light of the “overall picture,” id. at 1197, which included the fact that the employer immediately warned the harasser that his conduct was sexual harassment and ordered him to keep away from the complainant, promptly separated him from the complainant pending the outcome of the investigation, and the harassment stopped as a result of the employer’s intervention. Id. at 1192-98. We did not hold, nor have we ever held, that an employer may be deemed to have reasonably responded to a harassment complaint when it altogether fails to conduct an investigation. Indeed, we have stated that “the ‘fact of investigation alone’ is not enough. An investigation that is rigged to reach a predetermined conclusion or otherwise conducted in bad faith will not satisfy the employer’s remedial obligation.” Id. at 1193 (quoting Fuller v. City of Oakland, 47 F.3d 1522, 1529 (9th Cir.1995)).
Here, the majority acknowledges that Hardage told CBS’s human resources representative, Ray Falcone, that Sparks had made “ ‘unwanted sexual advances.’ ” Maj. op. at 1182. Yet, Falcone conducted no investigation and took no corrective action. Nor did he even inform Sparks that a complaint had been made, much less discipline her.[1] Nonetheless, the majority concludes as a matter of law that CBS exercised reasonable care to correct Sparks’ harassment. The majority relies on two facts: Hardage told Falcone he would handle the matter himself, and Hardage did not offer Falcone specific details about Sparks’ sexually harassing behavior. Maj. op. at 1186. Neither is a valid reason for absolving CBS of its duty to investigate and correct Sparks’ harassment.
First, a harassment complainant’s request that an employer take no action does not relieve the employer of its obligation under the law to investigate and remedy the harassing conduct. The Equal Employment Opportunity Commission’s (“EEOC”) Enforcement Guidance on Vicarious Liability for Supervisor Harassment speaks precisely to this point:
A conflict between an employee’s desire for confidentiality and the employer’s *1192 duty to investigate may arise if an employee informs a supervisor about alleged harassment, but asks him or her to keep the matter confidential and take no action. Inaction by the supervisor in such circumstances could lead to employer liability. While it may seem reasonable to let the employee determine whether to pursue a complaint, the employer must discharge its duty to prevent and correct harassment.
EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, § V.C.l.d, No. 915.002 (June 18, 1999)[hereinafter EEOC Enforcement Guidance].[2] This same concern was expressed by the Second Circuit in Malik v. Carrier Corp., 202 F.3d 97, 105-06 (2d Cir.2000). Although addressing slightly different circumstances, the Second Circuit in Malik noted the importance of an employer’s investigation of sexual harassment complaints, even when the victim employee desires to drop the matter:
[A]n employer’s investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer’s failure to investigate may allow a jury to impose liability on the employer.... Nor is the company’s duty to investigate subordinated to the victim’s desire to let the matter drop. Prudent employers will compel harassing employees to cease all such conduct and will not, even at a victim’s request, tolerate inappropriate conduct that may, if not halted immediately, create a hostile environment.
Thus, contrary to the majority’s holding, even if a complainant requests that the employer take no action, an employer still must fulfill its duty to prevent and correct the alleged harassment.
Moreover, while the majority purports to consider the “overall picture,” its account of CBS’s response to Hardage’s complaint ignores critical facts indicating that CBS failed to act reasonably. The majority’s summary of these events is brief: “[A]lthough Falcone offered to talk to Sparks and treat Hardage’s complaint as an anonymous complaint, Hardage insisted on handling the situation by himself.” Maj. op. at 1182. This account leaves out key aspects of Hardage’s discussion with Falcone. After Hardage told Falcone that Sparks had made unwanted sexual advances, Falcone asked Hardage, “What would you like me to do?” In response, Hardage said he “really d[id]n’t know,” and asked, “What are my options? How do you usually handle these things?” Falcone testified that he then told Hard-age he had three choices: (1) Hardage could “do absolutely nothing and hope it solves itself,” (2) Hardage could talk to Sparks on his own, or (3) Falcone could “very nicely talk with” Sparks and ask her to “just lay back on this a little bit,” but he assured Hardage he would not “yell at her and get her in trouble.”
Notably, not one of these options fulfilled CBS’s legal duty to investigate and correct the harassing behavior. The first two options flouted CBS’s obligation to take prompt corrective action. See Fuller, 47 F.3d at 1529 (“[IJnaction [cannot] fairly be said to qualify as a remedy ‘reasonably calculated to end the harassment.’ Title VII does not permit employers to stand idly by once they learn that sexual harassment has occurred. To do so amounts to ratification of the prior harassment.” (citation omitted)). The second option also inappropriately put the burden on Hardage to correct the harassment. See Nichols v. *1193 Azteca Rest. Enters., Inc., 256 F.3d 864, 876 (9th Cir.2001) (holding that an employer unreasonably responded to a harassment complaint when it “placed virtually all of its remedial burden on the victimized employee”)- Finally, the third option—the only one proposing any action by CBS at all—improperly included a guarantee that CBS would not discipline Sparks in any way. See McGinest, 360 F.3d at 1120 (“Remedial measures must include some form of disciplinary action.”).
It was only after Falcone presented these three legally inadequate options that Hardage said he would handle the situation himself. Even if an employer could be relieved of its duty to investigate and correct harassing behavior by virtue of a complainant’s request to address it on his own—which it cannot—this certainly cannot be true where, as here, “the overall picture” reveals that CBS affirmatively misled Hardage about its own legal duty and offered him no meaningful alternative to handling the situation on his own. An employer may not shield itself from liability by erroneously telling a complainant that doing “absolutely nothing” is a valid response to harassment, and then justifying its inaction by stating it was merely respecting the employee’s “choice.”
Second, the majority incorrectly holds that “there can be no duty” to investigate or correct harassment where an employee fails to offer specific details of the harassing behavior in the course of making his initial complaint. The majority notes that Hardage said he “did not tell [Dean] ‘specifics about sexual contact’ ” and did not tell Falcone the “ ‘gory details’ ” of Sparks’ behavior. Maj. op. at 1182. The majority, however, acknowledges that “Hardage did put CBS on notice of Sparks’ ‘unwanted sexual advances.’”[3] Maj. op. at 1186. This is all that is required to trigger CBS’s duty to investigate and correct the harassment.
There is simply no authority for the proposition that an employer who is on notice of unwanted sexual advances is relieved of the duty to investigate and take corrective action merely because the employee did not volunteer the details of the harassing conduct during his initial complaint to the employer, especially where— as here—the employer never asked for specifics. The very point of an investigation is to gather the details about the alleged harassment. See EEOC Enforcement Guidance § Y.C.l.e.i (providing examples of appropriate questions to ask the complainant during an investigation, including, “Who, what, when, where, and how: Who committed the alleged harassment? What exactly occurred or was said? When did it occur and is it still ongoing? Where did it occur? How often did it occur? How did it affect you?”).
To support its conclusion that an employer has no duty to investigate where the complainant is “vague about the extent and nature” of a supervisor’s sexual advances, the majority cites Ellison v. Brady, where we held that “remedies should be assessed proportionately to the seriousness of the offense.” 924 F.2d 872, 882 (9th Cir. 1991) (internal quotations omitted). In Ellison, however, we did not suggest that an investigation is a remedy that may or may not be imposed depending on the seriousness of the offense; indeed, there, the employer promptly investigated the complaint and requested that the harasser refrain from discriminatory conduct, yet we held that there was a genuine dispute of fact regarding the reasonableness of the remedy. Id. at 882-83. *1194 As we have made clear, “an investigation is principally a way to determine whether any remedy is needed and cannot substitute for the remedy itself.” Fuller, 47 F.3d at 1529.
The majority also cites Nichols, where we stated that the complainant had reported “the specifics of the harassment.” 256 F.3d at 870. In Nichols, however, we noted this fact in the context of holding that the district court clearly erred in finding that the complainant had not reported the harassment at all and in support of our conclusion that the complainant subjectively perceived his workplace to be hostile. Id. at 873 (“Sanchez told Serna, in considerable detail, about the fact and nature of the verbal abuse. Sanchez also complained to the Southcenter general manager and an assistant manager, though in less detail. It was clearly erroneous to find, as did the district court, that Sanchez had not complained about his harassment. ... That Sanchez complained about the frequent, degrading verbal abuse supports our conclusion that the conduct was unwelcome”).
Moreover, Nichols actually undermines the majority’s conclusion. There, we noted that the plaintiffs complaints did not comply with the formal reporting requirements of the employer’s anti-harassment policy; nonetheless, we held that the plaintiffs complaints “were sufficient to place the company on notice of the harassment.” 256 F.3d at 876 n. 10. Because the employer did nothing to investigate or remedy the harassment despite this notice, we held that the employer did not exercise reasonable care and could not assert the affirmative defense to vicarious liability. Id. at 877. As in Nichols, the critical point here is that CBS was on notice of Sparks’ unwanted sexual advances, yet failed to investigate or remedy the harassment.
Notice of Sparks’ unwanted sexual advances triggered CBS’s duty to investigate and take steps reasonably calculated to end the harassment. CBS’s inaction in the face of Hardage’s complaint not only violated its legal duty, it also violated its own written policy on sexual harassment. This policy states:
Following a complaint, a thorough investigation will be made by interviewing the individual(s) allegedly responsible for the harassment, and any witnesses. After the investigation, should it be determined that the allegations are true, then appropriate action will be taken, including, but not limited to, written reprimand, warning, suspension, demotion, or dismissal.
As noted, CBS admittedly never conducted an investigation of Hardage’s complaint and never took any disciplinary action against Sparks. Indeed, Falcone testified that his “recommendation ... was that it didn’t even need to be brought to Kathy Sparks’ attention.” On this record, a rational trier of fact readily could conclude that CBS failed to exercise reasonable care to correct Sparks’ harassing behavior. See Fuller, 47 F.3d at 1529 (“An employer whose sole action is to conclude that no harassment occurred cannot in any meaningful sense be said to have ‘remedied’ what happened.”).
The majority’s contrary conclusion marks a dramatic departure from our case law establishing that an employer breaches its duty of reasonable care when it fails to adequately investigate, and take steps to correct, harassing conduct. See Nichols, 256 F.3d at 866-68 (holding that employer did not exercise reasonable care to promptly correct sexually harassing behavior where it “made no effort to investigate Sanchez’s complaint; it did not discuss his allegations with the perpetrators; it did not demand that the unwelcome conduct cease; and it did not threaten more serious discipline in the event the harassment *1195 continued”); Fuller, 47 F.3d at 1529 (holding that employer could not be shielded from liability for sexual harassment where its investigation was inadequate, its offer to transfer victim improperly targeted the victim rather than the harasser, and the employer “failed to take any appropriate remedial steps once it learned of the harassment”); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir.1994) (reversing grant of summary judgment in favor of employer on vicarious liability where employer “was consistently slow to react to Steiner’s claims, and did not seriously investigate them or strongly reprimand” the harasser until after Steiner filed a complaint with the state equal rights commission); Ellison, 924 F.2d at 882 (holding that genuine issues of fact precluded summary judgment for the employer even though it “promptly investigated” the harassment allegation, where it “did not express strong disapproval of Gray’s conduct, did not reprimand Gray, did not put him on probation, and did not inform him that repeated harassment would result in suspension or termination”).
CBS’s conduct here is a far cry from actions that we have held fulfilled an employer’s duty of reasonable care. For example, in Kohler v. Inter-Tel Tech., 244 F.3d 1167, 1181 (9th Cir.2001)—where we stated that the facts “present a paradigm of the ‘reasonable efforts’ the Supreme Court sought to encourage when it established the affirmative defense”—the employer “responded by promptly hiring a neutral third party to investigate Kohler’s allegations,” and even though the investigator did not confirm the harassment claim, the employer nonetheless reviewed its antiharassment policy with the alleged harasser, reprimanded him for his behavior, and conducted mandatory sexual harassment trainings for the entire workforce. Id.; see also Holly D., 339 F.3d at 1177-78 (holding that employer acted reasonably as a matter of law where it “promptly convened an investigatory committee, which impartially interviewed every witness” suggested by the complainant and the alleged harasser; the employer reminded the harasser of its sexual harassment policy despite an initial determination that there was insufficient evidence of harassment; and once evidence came to light substantiating the victim’s complaint, the employer asked the harasser to resign); Montero v. Agco Corp., 192 F.3d 856, 862 (9th Cir.1999) (holding that employer exercised reasonable care where it promptly investigated the allegations, interviewed the complainant, the alleged harassers, and other employees at the facility, met with all employees “and made clear that the company would tolerate no retaliation against Plaintiff,” terminated one of the harassers, and disciplined the two others). In contrast, CBS did nothing to investigate or remedy Sparks’ behavior.
Even apart from CBS’s inaction following Hardage’s October 2000 complaint, Hardage raised a triable issue of fact regarding the reasonableness of CBS’s response to his earlier complaints to Patty Dean. Hardage testified that he complained to Dean “numerous times” about Sparks’ unwanted sexual advances and that Dean personally observed Sparks’ harassment. He also testified that Dean responded to Hardage’s complaints by suggesting, “Why don’t you just do it and get it over with. It may put her in a better mood.” This piece of evidence alone is sufficient to establish a genuine factual dispute as to whether CBS exercised reasonable care in responding to Hardage’s complaint. It is difficult to imagine how any reasonable juror could conclude that an employer who suggests that the complainant have sex with a harassing supervisor has acted reasonably to end the harassment. In concluding that Dean was not on notice of Sparks’ harass *1196 ment and that “[t]aken in context, Dean did not unreasonably fail to report the incident to CBS management, thereby triggering CBS’s duty to remedy the situation promptly,” Maj. op. at 1187, the majority improperly credits CBS’s account and fails to draw all inferences in favor of Hardage by dismissing his claims as “minimal and vague.” Id. at 18.
2. Whether Hardage Unreasonably Failed to Take Advantage of Corrective Opportunities
As noted above, the existence of a genuine factual dispute regarding either prong of the affirmative defense precludes summary judgment in favor of CBS. Because a reasonable jury could find that CBS failed to exercise reasonable care, Hardage is entitled to a trial even if CBS could establish as a matter of law that Hardage unreasonably failed to take advantage of CBS’s corrective opportunities. See Nichols, 256 F.3d at 877. Nonetheless, it is clear that on this record, a reasonable jury could find for Hardage on this second element as well.
In Faragher, the Supreme Court held that harassment victims have “a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of [Title VII].” 524 U.S. at 806, 118 S.Ct. 2275 (internal quotation marks omitted). The “burden [is] squarely on the defendant to prove that the plaintiff unreasonably failed to avoid or reduce harm.” Penn. State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004).
[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer’s burden under the second element of the defense.
Faragher, 524 U.S. at 807-08, 118 S.Ct. 2275. An employer who exercised reasonable care will not be liable “if the aggrieved employee could have avoided all of the actionable harm.... [I]f the employee unreasonably delayed complaining, and an earlier complaint could have reduced the harm, then the affirmative defense could operate to reduce damages.” EEOC Enforcement Guidance § V.D.
Here, the majority concludes as a matter of law that Hardage unreasonably failed to take advantage of CBS’s corrective opportunities because “his first complaint to Dean that he has identified with specificity” was not until about six months after Sparks’ harassment began. Maj. op. at 1188. In so holding, the majority fails to view the facts in the light most favorable to Hardage. Hardage testified that he reported Sparks’ harassing conduct to Dean on “numerous occasions” and told her, “I don’t want to be alone with her.” He also testified that Dean personally observed Sparks’ harassing behavior, and that in response to Hardage’s complaints about Sparks’ unwanted sexual advances, Dean suggested that he “just do it and get it over with.” Viewing the evidence in the light most favorable to Hardage, a reasonable jury could find that Hardage did not unreasonably delay in reporting Sparks’ harassment. Unlike in Kohler, where the victim never complained about her supervisor’s harassment, 244 F.3d at 1181, here, Hardage repeatedly complained about Sparks’ behavior.
Moreover, even if Hardage had not complained until October 2000, such a delay could not be deemed unreasonable as a matter of law. As the EEOC Enforcement Guidance explains, “An employee should not necessarily be expected to complain to management immediately after the first or second incident of relatively minor harassment.... An employee might rea *1197 sonably ignore a small number of incidents, hoping that the harassment will stop without resort to the complaint process.” EEOC Enforcement Guidance § V.D.l. Here, Hardage testified that the incident in October 2000 was “over the line” and that he went into Dean’s office the very next day and told her, “Last night, things went way too far.” He explained in his deposition, “When it spilled over to where it affects the team that reports directly to me that I’m responsible for—that’s—you know, ... I felt that it was detrimental, over the line, uncalled for.”[4] Finally, even if Hardage’s delay in reporting the harassment can be viewed as unreasonable in light of the circumstances, this is a matter for a jury to decide.
The majority also concludes that Hard-age’s claim fails as a matter of law because “[i]n addition to waiting half a year to make a complaint, when Hardage finally made his complaint he specifically asked the company not to investigate it.” Maj. op. at 1188. The majority omits, however, that Hardage opted to handle the matter himself only after Falcone provided him with the aforementioned legally inadequate response options. Under these circumstances, it can hardly be said that Hard-age’s decision to deal with Sparks’ sexually harassing actions himself is per se unreasonable in light of his other options that were “do absolutely nothing” or have Fal-cone, who promised not to take any disciplinary actions against Sparks, “very nicely talk with her ... and ask [her] to please, let’s just lay back on this a little bit.”
In sum, Hardage complained numerous times to his immediate supervisor, who personally observed the harassing behavior, yet she ignored his concerns and even suggested that Hardage sleep with Sparks “to put her in a better mood.” Moreover, it is undisputed that Hardage formally complained the day after the incident in October 2000, when he felt “things went way too far.” Contrary to the majority’s conclusion, CBS has not established as a matter of law that Hardage unreasonably failed to take advantage of its corrective opportunities.
* * *
An employer who is on notice of alleged harassment has a duty to adequately investigate and take prompt corrective action reasonably calculated to end the harassing behavior. Despite having notice of Sparks’ unwanted sexual advances, CBS did nothing. Accordingly, I would reverse the grant of summary judgment and remand for a trial.

. Falcone testified in his deposition as follows:
Q: "Just to confirm, ... based on your conversation with Mr. Hardage, you didn’t conduct any investigation—
A: Correct.
Q: —of these claims?
A: Yes.
Q: And I take it that Ms. Sparks was never disciplined in any way?
A: No. I never even—my recommendation to Ray Rajewski was that it didn't even need to be brought to Kathy Sparks' attention.
Further, Patty Dean testified:
Q: Did Mr. Falcone ever contact you or interview you in any way regarding Mr. Hardage’s complaints about Ms. Sparks?
A: No, I believe not.
Q: Okay. Did anyone at KSTW or CBS, the broader entity, ever contact you, ask you any questions, interview you, anything of that kind regarding Mr. Hardage’s complaints about Ms. Sparks?
A. No.”

. We have held that the EEOC’s interpretations of Title VII as expressed in this Enforcement Guidance “are entitled to respect.” Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1172 (9th Cir.2003).

. Indeed, Hardage testified that he told both Dean and Falcone that Sparks had made unwanted sexual advances, and Dean herself testified that she understood that Hardage was complaining about sexual harassment.

. Notably, the incident in October 2000 is the only incident of harassment that CBS characterizes as "work related.” If this is correct, then Hardage could not be deemed unreasonable in failing to report Sparks' earlier conduct to CBS.