In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2682

LOUISE HILL,

Plaintiff-Appellant,

v.

AMERICAN GENERAL FINANCE, INCORPORATED,
a corporation,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 96 C 242--William D. Stiehl, Judge.


Argued January 21, 2000--Decided May 4, 2000


  Before POSNER, Chief Judge, and DIANE P. WOOD and
EVANS, Circuit Judges.

  EVANS, Circuit Judge.  Allegedly fed up with her
boss making highly offensive remarks, Louise Hill
complained and ultimately sued her employer
American General Finance, Incorporated for sexual
and racial harassment and for retaliating against
her for complaining about it, all under Title VII
(42 U.S.C. sec. 2000e et seq.). Prior to the
recent establishment of a standard for company
liability based on the conduct of supervisors
under Title VII, the district court granted
summary judgment dismissing Hill's case. Our task
is to determine whether the grant of summary
judgment is consistent with the standard as it
was set out in Faragher v. City of Boca Raton,
524 U.S. 775, 118 S. Ct. 2275 (1998), and
Burlington Indus., Inc. v. Ellerth, 524 U.S. 742,
118 S. Ct. 2257 (1998).

  Hill went to work in the defendant's Alton,
Illinois, office in September 1994. She became a
lending/collection administrator. Her job was to
extend loans and credit, close on loans, and
collect past-due accounts. She worked in a one-
room office with up to eight other people,
including her supervisor Darin Brandt. At the
time, Hill was the only African-American working
in the tiny office.

Hill alleges that within a month of her arrival in the office, Brandt began to act in a way which amounted to sexual and racial harassment. He made reference to the size of his penis. He said, "I like a woman with a big ass, like Louise's." He asked her if a doctor's appointment was for her breasts or between her legs. He talked about the ways he liked sex, the frequency of sex, and about pornographic movies. He once, according to Hill, rubbed his pelvis against her buttocks and said, "Boy that feels good." He said, "Once you go black, you never go back"; "Don't come into this office talking black, because this ain't no Aunt Jemima office"; he was "sick of black people getting food stamps and having all those black babies." In moving for summary judgment, AGF had to accept Hill's allegations as true. The company also does not contest that Brandt's conduct was harassment.

On February 2, 1995, Hill wrote a letter to AGF's chief executive officer complaining of Brandt's behavior to customers and of his vulgar language. She signed the letter "Lillie Rogers," representing herself as a customer. She wrote another letter on February 6 which she signed "a very worried and frighten[ed] employee." On February 23 the Human Resources Department conducted an investigation; Hill was interviewed, and although the director of operations, Gary English, suspected that Hill had written the letters, Hill did not acknowledge that she had. No other employees confirmed any of the harassment, but some admitted they had conversations of a sexual nature in the office. On March 9 English issued Brandt a warning for allowing such conversations to take place. About the same time, English mentioned that AGF would be opening additional offices and suggested the possibility that Hill might be interested in training in what seems to have been a self-directed, computerized, instructional program, called the BEST program, to be an assistant manager. English considered Hill to be an outstanding salesperson and that her talent for dealing with people was the best he'd ever seen.

On April 14 Hill wrote a letter to English in which she set out instances of harassment. This time she signed her own name. Two days later, Carleen Thompson, the company's human resources attorney, and Larry Bauer, outside counsel for the company, went to Alton to investigate. They conducted a follow-up investigation on April 26, 1995. Thompson concluded that she should issue a written warning to Brandt, provide him with additional training, transfer and demote him, and transfer Hill to prevent retaliation from her co-workers. On May 2, 1995, Brandt was transferred to the Belleville branch office with a $10,000

reduction in pay. He received a written warning for failing to cooperate with the investigation and for inappropriate conduct. At the end of April, Thompson informed Hill that she was being transferred to the Kingshighway office in St. Louis. Hill says it was a transfer to a dangerous high-crime area in which she was required to make door-to-door collection calls; AGF says evening calls were extremely rare. Hill also claims that the manager at Kingshighway was openly hostile to her; she says he recommended that she be fired for allegedly providing competitors with names of prospective loan applicants, but she was exonerated. Nevertheless, she resigned on July 6, 1995.

We review grants of summary judgment de novo, drawing all reasonable inferences from the facts in favor of the nonmovant. Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027 (7th Cir. 1999). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). We may affirm on any ground on which there is support in the record. Parkins. We evaluate this case, then, to see if the record is sufficiently developed for us to fairly apply the Faragher-Ellerth standard or whether a remand to the district court is required for an expansion of the record.

Whether a remand is necessary is a fact-based call. Some cases have been remanded for necessary development of the record. In fact, the Ellerth case itself was remanded so that the "District Court will have the opportunity to decide whether it would be appropriate to allow Ellerth to amend her pleading or supplement her discovery." Ellerth, at 2271. Other cases have done pretty much the same thing. See Rubidoux v. Colorado Mental Health Inst. Pueble, 173 F.3d 1291 (10th Cir. 1999); Burrell v. Star Nursery, Inc., 170 F.3d 951 (9th Cir. 1999); Wilson v. City of Plano, Texas, 164 F.3d 900 (5th Cir. 1999). On the other hand, of course, the Court found the record in Faragher sufficient to order reinstatement of the judgment for Faragher. Similarly, although with a judgment for the defendant, we found in Shaw v. Autozone, Inc., 180 F.3d 806, 814 (7th Cir. 1999), cert. denied, 120 S. Ct. 790 (2000), that "while the standard for liability has changed, the record and arguments were fully developed for application of the new standard."

The new standard is:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile

environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. . . .

No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Ellerth, at 2270; see also Faragher at 2292-2293.

Although Hill claims that she suffered an adverse employment action as part of the retaliation against her, she does not argue that she suffered a tangible employment action as part of her harassment claims. In fact, in her deposition she states on several occasions that in her mind the adverse employment action was not based on either racial or sexual harassment, but rather was in retaliation for her lodging her complaint. Therefore, under Ellerth and Faragher the company has a possible defense to the harassment claims, and our review of the record convinces us that AGF has established the defense as a matter of law.

One element of the defense involves whether the employee took advantage of opportunities to prevent harassment. On the basis of the record we must conclude that Hill did not notify the company of the harassment until her letter of April 14. The February letters were not a reasonable effort at notification. They were not signed and she did not acknowledge that she had written those letters when the company investigated the complaints set out in the letters. In fact, Hill began her April 14 letter by apologizing: "Please accept my apology for not being completely honest during the interview with you and the attorneys for the company." She then proceeded to lay out some of her complaints about Mr. Brandt and his treatment of her. So, starting

with her letter of April 14 Hill took reasonable steps to correct the situation which existed in the Alton office. But the same cannot be said for her actions before April 14.

The other element of the defense is whether the company "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." It is not disputed that after the April 14 letter the company took immediate corrective action. In a flash, after the receipt of the letter, the company again investigated Brandt's conduct. Hill testified that English came to Alton on April 16 in response to her complaint and told her that if she had any problems she should call him. In fact, by Hill's own account, she and Brandt were in the Alton office together for only 5 or 6 days after the company received her complaint. Carleen Thompson and Larry Bauer also conducted an investigation, and as a result, Thompson concluded that both Brandt and Hill should be transferred out of the Alton office. Brandt's salary was cut by $10,000 in the transfer.

In regard to this element of the defense, we are also told that we may consider whether the company had policies or procedures to help employees deal with problems of harassment. While an appropriate anti-harassment policy with complaint procedure is not always necessary to sustain the defense, it is a relevant consideration. Ellerth.

AGF had a number of policies in place at the time of these events./1 While they may leave room for improvement, the policies get the job done. One was entitled "Equal Employment Opportunity; Policy Regarding," dated August 1, 1994. It set out that AGF's policy was to comply with laws regarding equal employment without regard to race. Questions regarding this policy were to be directed to the group manager of Employee and Field Relations. Another policy statement was entitled "Sexual Harassment in the Workplace; Policy Regarding." It set out AGF's goal "to maintain a work environment free of sexual harassment." The policy prohibited "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" when, as relevant here, the "conduct has the purpose or effect of substantially interfering with an individual's work performance or creating a work environment that is reasonably perceived by the individual to be intimidating, hostile, or offensive." A complaint procedure was set out in another memorandum dated May 16, 1994, and involved four basic levels. The first is to the immediate supervisor or manager. If that fails (as it obviously would here) or if the "employee

does not feel it is a matter that can be discussed with the supervisor," the employee can discuss the matter with the appropriate Field Relations Consultant; the Associate Director, Employee Relations and Benefits; or the Director of Human Resources and Systems Management. The third is a complaint to the Fair Employment Practices Compliance Officer. A telephone number for complaints is provided. The fourth level is the Personnel Administration Committee through the Director of Human Resources and Systems Management.

Hill claimed that she did not recall having received copies of the policies. Perhaps not, but Carleen Thompson testified at her deposition that the policies within each branch office were kept in a set of notebooks in a "public access type place" where the employees could look at them. More importantly, Hill testified that she knew when she began to work for AGF that there was a human resource group in the company whose job it was to make sure there was no sexual or racial harassment of employees. She testified that she knew she could complain to that group if there was a problem with harassment. She also acknowledged knowing that she could talk with English about complaints. And, of course, that is precisely what she did. While it is true that her anonymous letter and the one signed with a fictitious name might show that she was somewhat apprehensive about complaining, we have previously determined that apprehension does not eliminate the requirement that the employee report harassment: "an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under Ellerth to alert the employer to the allegedly hostile environment." Shaw v. Autozone, at 813.

As a matter of law, on the record as it exists, AGF is entitled to summary judgment. Darin Brandt's behavior, as alleged, was ignorant and loutish. However, when the company was notified of his behavior, it reacted with commendable alacrity in almost a textbook example of what is supposed to happen. Having failed to recover damages, Hill may not see it quite that way, but, in fact, the goal of Title VII is prevention, not damages. When prevention occurs and there is no adverse employment action, strict liability does not apply. In Faragher the Court said:

Although Title VII seeks "to make persons whole for injuries suffered on account of unlawful employment discrimination," [citation omitted], its "primary objective" like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm.

At 2292.

   Hill also contends that she was retaliated
against in her transfer to Kingshighway and her
treatment once she got there. To prevail on this
claim, Hill must show that she suffered an
adverse job action because of her complaints of
harassment. McKenzie v. Illinois Dep't of
Transp., 92 F.3d 473 (7th Cir. 1996). Absent
direct evidence of retaliation, she must show
that (1) she engaged in activity protected under
Title VII; (2) she suffered an adverse employment
action; and (3) a causal connection exists
between the adverse action and her participation
in the protected activity. Smart v. Ball State
University, 89 F.3d 437 (7th Cir. 1996). An
adverse action occurs when an employee is fired
or demoted, suffers a decrease in benefits or
pay, or is given a significantly lesser job. Not
every unwelcome employment action qualifies as an
adverse action. Negative reviews, a change in job
title, an increased distance to travel to work,
or a lateral transfer do not, by themselves,
qualify. Id.

   After Hill's April 14 letter, she contends that
she was retaliated against by a transfer to
Kingshighway and then by being forced out of a
training program. The transfer, however, was to
a position which presented better opportunities
for her as Hill herself admitted in her
deposition. The training program was a self-
directed program which she voluntarily started
when she arrived at Kingshighway. She resigned
her position before completing the program. Other
"allegations" of retaliation, such as that her
new supervisor rummaged in her desk drawers and
waste can and listened to her telephone calls,
cannot be considered adverse employment actions.
In fact, at her deposition she acknowledged that
she had no facts to support those claims.

   The most serious problem Hill encountered at
Kingshighway occurred when her supervisor
recommended that she be terminated. But he had a
reason; Hill had given a friend at a competing
company information about loans AGF had rejected
(presumably so the friend's company could make
the loans). For her efforts to help her friend,
she had obtained a one-percent kickback, all of
which, needless to say, was in violation of AGF's
policies, though Hill claimed she did not know
about any such policies. AGF gave her a second
chance and rejected the recommendation to
terminate her. Given what Hill did, it is a
stretch to think that, in fact, her supervisor
was retaliating against her in this instance for
complaining about harassment at another office by
another supervisor. In short, Hill cannot sustain

a claim of retaliation.

Accordingly, we are convinced that the record before us supports the grant of summary judgment and that it would be a wasteful and fruitless exercise to require the district court to look again at the matters we just considered. The judgment is AFFIRMED.

/1 The policies were marked as exhibits at Hill's deposition. However, they were not included in the original appeal record. On January 27, 2000, we granted AGF's motion to supplement the record with the documents.

DIANE P. WOOD, Circuit Judge, dissenting in part. The recent decisions from the Supreme Court on the subject of workplace harassment emphasize the importance of the policy on harassment that a company adopts and maintains, when liability for the actions of a supervisor are at issue. See Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). When an employee who complains of sexual or other forbidden harassment from a supervisor can point to a tangible employment action, the employer is subject to vicarious liability no matter what policy it has on the books. If the complaining employee has not suffered from a tangible employment action, however, the employer is liable unless it can establish the two elements of a new affirmative defense. Those elements are (1) that the employer exercised reasonable care both to prevent and to correct promptly any sexually (or, as here, racially) harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities that were provided by the employer or otherwise available. Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765.

Louise Hill's case arose before either Faragher or Ellerth was decided, and so it is hardly surprising that the district court did not follow the language of those opinions chapter, book, and verse. Nevertheless, it is our duty now, on de novo review from the grant of summary judgment in favor of defendant American General Finance (AGF), to decide whether the company is entitled to prevail as a matter of law. The majority has found that the record is sufficiently developed to permit this court to apply the new legal standards and to affirm the district court's judgment. With respect, I cannot agree. Significant facts remain to be developed on both

parts of the employer's affirmative defense--a defense, it is important to remember, on which the defendant bears the burden of proof, not the plaintiff. Looking at the facts in the light most favorable to Hill, as we must, I cannot find that AGF has succeeded in meeting that burden.

Like the majority, I find no serious dispute over the question whether Hill suffered any tangible employment action, such as discharge. There is no hint of that in the record. I also agree that the Faragher/Ellerth approach applies to cases based on racial harassment in the workplace, just as it does to sexual harassment. See Allen v. Michigan Dept. of Corrections, 165 F.3d 405, 411 (6th Cir. 1999); Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 593 (5th Cir. 1998); Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1270 (10th Cir. 1998). The central question is thus whether it is clear beyond dispute that AGF has, on the basis of undisputed facts, established its affirmative defense.

Unlike the majority, I begin with an analysis of AGF's policy against workplace harassment--a policy that the majority concedes left some "room for improvement." Ante at 6. One document to which AGF points did no more than to say that it was AGF's policy to comply with laws regarding equal employment without regard to race, and to mention that questions with respect to this policy were to be directed to the group manager of employee and field relations. What kind of policy is this? Was AGF trying to communicate to its employees that it had decided not to be a scofflaw? Employees would have had a right to assume that their employer was not deliberately setting out to violate relevant federal and state statutes. This policy accomplishes nothing, unless we are giving employers credit for stating the obvious and for giving a telephone number for further inquiries. Its unsatisfactory nature is apparent when we compare it to the careful policies so many employers have adopted, both before and since the decisions in Faragher and Ellerth. Those policies take care to define for employees what kinds of behavior are forbidden, to underscore the fact that even supervisory employees must treat everyone with respect, to set forth alternate ways to voice complaints (in case one route is effectively blocked because the harassing supervisor would get in the way), and to stress the importance of preventive measures. Careful policies describe the disciplinary measures the company might use in a harassment case, encourage employees to make complaints, state unequivocally that retaliation will not be tolerated, and explain that complaints will be examined in a confidential manner. In addition, policies should describe the responsibility of

supervisors (and employees) who learn of harassment through informal channels. See, e.g., Montero v. Agco Corp., 192 F.3d 856, 862 (9th Cir. 1999); Shaw v. Autozone Inc., 180 F.3d 806, 809 (7th Cir. 1999); Fenton v. HiSan Inc., 174 F.3d 827, 833 (6th Cir. 1999); Wilson v. Tulsa Junior College, 164 F.3d 534, 541 (10th Cir. 1998); Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1066 (10th Cir. 1998). A second policy on which AGF relied addressed sexual harassment specifically. The majority describes it, and so I will not repeat every detail. Even though it goes into somewhat greater detail about the kind of behavior the policy addresses, it too does not meet the standards that have been found to be satisfactory. Yet another memorandum outlines a four-step complaint procedure.

Even if we were to agree that the latter two policies somehow met the legal requirements that the Supreme Court had in mind, however, more is necessary. Critically, the employer has the burden not only to show that it has enacted an adequate policy, but also that it has taken reasonable care (1) to prevent and (2) promptly to correct any harassing behavior. If the employees do not know that a policy exists, then even the most admirable policy will not accomplish either of those goals. And it is on this point that AGF is most vulnerable. Hill claimed that she did not recall ever receiving those policies. AGF did not try to refute this testimony by showing, as many employers do, that Hill signed for receipt of the policies when she joined the company, nor did it introduce evidence indicating when the policies were first released to the workforce. It did not do this because, at least as the record shows so far, that never happened. Instead, the best AGF could do was to assert that the policies were buried in some notebooks that were themselves located in a "public access area" and accessible to employees. If this is all it did (and we must so assume at this stage of the proceedings), I would find it to be insufficient to show the required reasonable care for purposes of the affirmative defense. Cf. Savino v. C.P. Hall Co., 199 F.3d 925, 932-33 (7th Cir. 1999) (sexual harassment policy posted, with instructions on how to report harassment); Montero, 192 F.3d at 862 (handbook with harassment policy distributed to all employees as well as a separate memorandum and two pamphlets describing that policy); Shaw, 180 F.3d at 809 (copy of harassment policy given to each employee in employee handbook and training provided periodically to managers on the company's sexual harassment policies and guidelines). Employees cannot be expected to go around opening up all sorts of unmarked binders, to see if by any chance they might contain the

company's harassment policy.

Because AGF in my view fails the first of the two required showings for the affirmative defense, it is not entitled to summary judgment. The Supreme Court indicated in Faragher and Ellerth that the two factors were independent criteria, both of which had to be satisfied. Thus, even if the majority is correct and the uncontested facts showed that Hill had some idea how to complain, I would regard the summary judgment as incorrect. In fact, however, the uncontested facts do not show that she knew what to do. Granted, she did not follow the procedures prescribed in the collection of policies and memoranda on which AGF is now relying (undoubtedly because she did not know what they said). This failure on her part cannot be called unreasonable as a matter of law, since the measures the company took to bring the proper procedures to her attention are subject to dispute.

I concur in the majority's rejection of Hill's retaliation claim, which does not rest on the kinds of disputed facts that should allow her to proceed on the harassment claim. I would, however, reverse the entry of summary judgment and remand Hill's harassment claim for further proceedings, and to that extent I respectfully dissent.