IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 6, 2000 Session

## CHRISTA L. KEETON v. ARLYN HILL, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 98-298-III     Ellen Hobbes Lyle, Chancellor**

-----

**No. M1999-02272-COA-R3-CV - Filed October 10, 2000**

-----

Plaintiff, a former employee, appeals from the trial court's grant of summary judgment to her former employer on her sexual harassment claim. Because the employer successfully demonstrated the elements required to establish the affirmative defense for employers recognized in *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 175-76 (Tenn. 1999), we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., joined.

Leslie A. Bruce and J. Todd Faulkner, Nashville, Tennessee for the appellant, Christa L. Keeton.

Douglas R. Pierce and James A. Crumlin, Jr., Nashville Tennessee, for the appellees, Arlyn Hill, Tom Chinander, and Cook's Pest Control.

### OPINION

Plaintiff, Christa L. Keeton, worked as a pest control technician at Cook's Pest Control ("Cook's") from 1993 to 1997 when she was fired for falsifying company documents relating to her work time. She sued her corporate employer, Cook's, her immediate supervisor, Tom Chinander, and the district manager, Arlyn Hill, for retaliatory discharge, sexual harassment, sex discrimination, outrageous conduct and invasion of privacy. After the trial court granted the defendants' motion for summary judgment, Ms. Keeton appealed the dismissal of the sexual harassment claim.

When Cook's Pest Control hired Ms. Keeton in 1993, she was required to review a policy and procedures manual which delineated the company's sexual harassment policy. She signed an acknowledgment form indicating that she understood that she was "charged with knowledge of the contents of this manual." This written policy named specific individuals, a man and a woman, not supervisors of Ms. Keeton, who were to be contacted if employees felt they were being subjected

to sexual harassment. The company's sexual harassment policy was set forth on page 717 of the manual as follows:

> It is Cook's Pest Control's policy to prohibit sexual harassment of one employee by another employee or a supervisor.
>
> Though it is not easy to define precisely what sexual harassment is, it is unwelcome sexual behavior. The most blatant type of harassment takes the form of explicitly or implicitly offering a benefit in exchange for sex. However, just as prohibited is the more subtle sexual behavior that has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive environment. It certainly includes unwelcome jokes or comments, sexual advances, requests for sexual favors, unwanted touching or other verbal or physical conduct of a sexual nature. Any employee who feels that he or she has been subjected to sexual harassment should immediately report the matter to George White, Personnel Director, or Lana Jones, Personnel Assistant, in the Corporate Office (205-355-3285). Violations of this policy will not be permitted and will result in disciplinary action up to and including discharge. Employees can be assured that no one will be retaliated against for either filing a complaint or participating in an investigation of sexual harassment.

The manual was kept in Mr. Hill's office.

Ms. Keeton also received sexual harassment training in March of 1995 during one of the monthly meetings the district manager, Mr. Hill, held. During the meeting, he read the sexual harassment policy to her and other employees. Ms. Keeton was instructed on the procedures for reporting such harassment which included the individuals to whom she was to report. Plaintiff later admitted that during the meeting Mr. Hill stated that sexual harassment would not be tolerated. However, she also claimed that during the class, Mr. Hill described an incident where a female harassed a male and commented, "If it had been me, I would have been flattered." She also claimed that during the meeting Mr. Chinander stated to her, "I guess I'll have to stop sexually harassing you now."

After the meeting, the participants, including Mr. Hill, signed a training verification which stated, "I went over all the materials you sent to the District Office and read page 717 [which contained the sexual harassment policy quoted above] of the company policy to the following named. [signed] Arlyn Hill, District Mgr." The record shows that Ms. Keeton signed this statement, as did Mr. Chinander. The record also shows that Ms. Keeton contacted the personnel assistant, Ms. Jones, once for an unspecified reason.

Over the years, Plaintiff had received disciplinary notices for failing to report her time and attend required meetings. According to Ms. Keeton, during her tenure at Cook's both Mr. Hill and Mr. Chinander made off-color, sexually oriented remarks and gestures to her. At her deposition, Ms.

Keeton offered the following description of an incident, at the end of January of 1997, when she passed Mr. Hill in the hall, and he purportedly stated:

"Your beamers are on." And that was just a snide remark, because I think I even had on a jacket and I just said, I am so tired of hearing that, and kept on walking. This was during the time when there was a lot of – I was getting a lot of friction from him . . . I don't know if he [heard my remark] or not.

Ms. Keeton was fired on February 3, 1997, ostensibly for failing to service two customers while presenting documentation (a time card) to her employer that she had. She testified that this was a customary practice. During the day she failed to service the customers, she made two work related phone calls from home, but also admitted to running errands and working out at her health club.

Ms. Keeton filed the underlying action on January 30, 1998, alleging sex discrimination, retaliation, and sexual harassment under the Tennessee Human Rights Act as well as the common law torts of invasion of privacy and outrageous conduct. She alleged that her supervisors, Mr. Hill and Mr. Chinander, made lewd and sexually derogatory remarks to her. The complaint stated that shortly after Ms. Keeton complained about the harassment to Cook's at the end January 1997, she was discharged. Ms. Keeton sought both compensatory and punitive damages.

Cook's Pest Control, Mr. Hill and Mr. Chinander jointly moved for summary judgment. The trial court granted the motion in its totality. It found that summary judgment was proper on the sexual discrimination claim because Plaintiff demonstrated no pretext in response to Defendants' legitimate nondiscriminatory reason for firing her: that she falsified her time card. It also determined that summary judgment was appropriate on the retaliation claim because the record contained no proof that Defendants ever knew that Plaintiff had exercised her protected civil rights before she was fired. Based on findings that (1) the alleged harassment did not culminate in any tangible employment action, (2) the defendants sought to prevent and correct any sexually harassing behavior, and (3) Ms. Keeton unreasonably failed to take advantage of the company's preventative and corrective procedures, the trial court granted summary judgment on the sexual harassment claim. The court found that the invasion of privacy claim failed because Plaintiff conceded in her response that this claim lacked merit and the outrageous conduct claim failed because the record contained no evidence of such conduct.

I.

Because Ms. Keeton is challenging the entry of summary judgment, we review the decision of the trial court *de novo* with no presumption of correctness on appeal. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). We must consider the proof in the record in the light most favorable to the party opposing the motion. *See Berry v. Whitworth*, 576 S.W.2d 351, 352-53 (Tenn. Ct. App. 1978). If, upon review, a genuine issue exists or if there is doubt as to whether such issue exists, the summary judgment is improper

and should be reversed. *See Evco Corp. v. Ross,* 528 S.W.2d 20, 24-25 (Tenn. 1975). However, if both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion, summary judgment should be granted. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Bain*, 936 S.W.2d at 622.

## II.

Ms. Keeton argues that issues of material fact on the reasonableness of the company's sexual harassment policy remain to be tried.[1] She maintains that her written acknowledgment that she had read and understood the company's sexual harassment policy is overshadowed by her deposition testimony that she never read the policy. She asserts that because the employee manual containing the sexual harassment policy was located in Mr. Hill's office, it was unreasonable to expect her, as a sexually harassed employee, to go to her harasser's office to study the policy. Ms. Keeton further argues that the sexual harassment training was a sham because of remarks made by Mr. Hill and Mr. Chinander. Ms. Keeton maintains that the sexual harassment training intensified her anxiety about reporting the harassment.

Recently, courts on both the state and federal levels have recognized an affirmative defense from vicarious liability for employers whose employees assert claims of sexual harassment by supervisors. Our Supreme Court described that defense as follows:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's sexual harassment culminates in a tangible employment action. . . . *Faragher*, 118 S.Ct. at 2292-93; *Ellerth*, 118 S.Ct. at 2270.

*Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 175 (Tenn. 1999) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 1188 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 1188 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).

In order to fully analyze the availability of the affirmative defense to sexual harassment recognized and adopted in *Parker*, we must first look to the trial court's findings with regard to Ms. Keeton's sex discrimination claim. The trial court specifically found that:

> Cook's is entitled to summary judgment on Plaintiff's sex discrimination claim because, even assuming a *prima facie* case of sex discrimination, Plaintiff has not

---

[1] On appeal, Ms. Keeton has not asserted any arguments involving her claims against Mr. Hill or Mr. Chinander.

demonstrated pretext in response to Cook's legitimate nondiscriminatory reason for terminating Plaintiff's employment: falsifying company documents relating to her work time.

Ms. Keeton did not present this finding for review or otherwise challenge the disposition of her sex discrimination claim on appeal, and the record supports the trial court's finding of fact. *See* Tenn. R. App. P. 13(b), 36(a). This finding, and the evidence presented, establish that Ms. Keeton's discharge was not a result of her supervisor's alleged harassment. *See Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270, 141 L. Ed. 2d at 655. Instead, her discharge was the result of the falsification of her time records. This finding, which remains unchallenged, satisfies the first element of the affirmative defense available under *Parker* permitting employers to avoid liability for supervisor sexual harassment under Title VII: that a tangible employment action resulting from sexual harassment has not occurred. *See Lowry v. Powerscreen USB, Inc.*, 72 F. Supp. 2d 1061, 1070 n.10 (E.D. Mo. 1999) (finding that a plaintiff's admission that her discharge was due to her falsification of a work return slip entitled her corporate employer to assert the affirmative defense).

The second element of the affirmative defense requires proof that Cook's reasonably sought to prevent and correct any sexually harassing behavior. *See Parker*, 2 S.W.3d at 176. The record shows that Cook's implemented a sexual harassment policy which was set forth in its policies and procedures manual. This policy expressly prohibited sexual harassment, assured employees that it would not be tolerated, and warned that there would be serious consequences for committing prohibited behavior. It advised employees who felt that they were subjected to sexual harassment to "immediately report the matter" to either of two specific individuals, a woman and a man. These individuals were not Ms. Keeton's supervisors and, in fact, worked in corporate offices in another city. Employees were assured that no one would be retaliated against for either filing a complaint or participating in an investigation of sexual harassment. The record shows that the policy was disseminated to new employees, including Ms. Keeton, who were required to read the sexual harassment policy and to sign an acknowledgment indicating that they had done so. The record also shows that the policy was orally presented to Ms. Keeton and her coworkers by Mr. Hill.

We find that Cook's satisfied its burden of establishing by a preponderance of the evidence that it exercised reasonable care to prevent and promptly correct sexually harassing behavior. Employers need not prove success in preventing harassing behavior in order to demonstrate that they exercised reasonable care in preventing and correcting sexually harassing conduct. *See Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 295 (2d Cir. 1999), *cert. denied sub nom. Metro-North Commuter R.R. v. Norris*, __U.S. __, 120 S. Ct. 1959, 146 L. Ed. 2d 791 (2000). Cook's efforts to maintain and distribute a policy prohibiting sexual harassment and to provide a mechanism for employees to report such conduct directly to the Personnel Department demonstrate its exercise of reasonable care to prevent sexual harassment. *See Faragher*, 524 U.S. at ___, 118 S. Ct. at 2293, 141 L. Ed. 2d at 689 ("While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense."); *see also Fierro v. Saks Fifth Avenue,* 13 F. Supp. 2d 481, 491

(S.D.N.Y. 1998) (noting that the existence of an anti-harassment policy with complaint procedure is "an important, if not dispositive, consideration"). A policy meeting these parameters was found to show the exercise of reasonable care in *Montero v. AGCO Corp.*, 19 F. Supp. 2d 1143, 1146 (E.D. Cal. 1998), *aff'd*, 192 F.3d 856 (9th Cir. 1999). *See also Caridad,* 191 F.3d at 295.

The third element of the *Parker* affirmative defense requires proof that the employee unreasonably failed to take advantage of any preventive or corrective opportunities that were provided by the employer or were otherwise available. *See Parker*, 2 S.W.3d at 176. This element, which requires proof that

> the employee failed in a coordinate duty to avoid or mitigate harm[,] reflects an equally obvious policy imported from the general theory of damages, that a victim has a duty "to use such means as are reasonable under the circumstances to avoid or minimize the damages" that result from violations of the statute. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, n. 15, 102 S.Ct. 3057, 3065, n. 15, 73 L.Ed.2d 721 (1982) (quoting C. McCormick, Law of Damages 127 (1935) (internal quotation marks omitted)). An employer may, for example, have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense. If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

*Faragher*, 524 U.S. at 806-07, 118 S. Ct. at 2292, 141 L. Ed. 2d at 688. Proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm will normally suffice to satisfy the employer's burden under the third element of the defense. *See id.*, 524 U.S. at 807, 118 S. Ct. at 2293, 141 L. Ed. 2d at 689. Such proof is clearly evident here.

The record shows that Ms. Keeton began working for Cook's on November 15, 1993. On her first day of employment, she signed a document stating that she had read the company's policy manual. Ms. Keeton signed a second document dated March 3, 1995 which stated that Mr. Hill had "read page 717 of the company policy" to her. The record shows that page 717 contained the company's sexual harassment policy.

The record also shows that Ms. Keeton never provided the company with notice of the prohibited conduct allegedly committed by Mr. Chinander and Mr. Hill. She never availed herself of the procedures set forth in the sexual harassment policy, notwithstanding the fact that she had contacted the one of the individuals named in the policy on a previous occasion for an unrelated, unspecified purpose. Inasmuch as the fact that the policy and procedures manual was kept in Mr. Hill's office did not prevent Ms. Keeton from contacting that individual on the previous occasion,

we find it unreasonable that Ms. Keeton did not avail herself of the remedies the company made available to victims of sexual harassment. Under these circumstances, where the company had a reasonable, broadly disseminated policy prohibiting sexual harassment, we find that Ms. Keeton's failure to report the alleged harassment was unreasonable. *See id.*

This finding is supported by other cases following *Ellerth* and *Faragher.* In *Hill v. American Gen. Fin. Corp.*, 218 F.3d 639 (7th Cir. 2000), the Seventh Circuit found that an employee who complained of sexual and racial harassment by a supervisor in two letters, one anonymous and one signed with a false name, failed to take advantage of the opportunities her employer presented to prevent sexual harassment. The court noted that the employer had a sexual harassment policy in place and as soon as the employee made an official complaint, the company immediately took corrective action. *Hill*, 218 F.3d at 643. On these facts, the court found that the employer was entitled to summary judgment as a matter of law. *See id.* at 644. In *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1301 (11th Cir. 2000), the two employee plaintiffs admitted that they understood their employer's complaint procedures and knew who to contact under the sexual harassment policy. "Yet despite knowing exactly who they should contact regarding sexual harassment, the plaintiffs chose to complain informally to managers that were not authorized to receive such complaints under the . . . sexual harassment policy." *Madray*, 208 F.3d at 1301. The Eleventh Circuit granted summary judgment to the employer after concluding that the employees unreasonably delayed utilizing the employer's complaint procedures. *See id.* at 1302; *see also Montero,* 192 F.3d at 863 (finding an employee's delay in utilizing an employer's established complaint procedures equated to unreasonably failing to take advantage of the company's preventive and corrective opportunities).

Ms. Keeton asserts that the above-quoted comments she made to Mr. Hill as they passed in the hall shortly before her firing constituted notice of the harassment. She maintains that because Defendants had notice of the harassment, her failure to lodge a formal complaint did not preclude Defendants' liability. For this, Ms. Keeton relies on *Hollis v. Fleetguard, Inc.* 668 F. Supp. 631 (M.D. Tenn. 1987), *aff'd,* 848 F.2d 191 (6th Cir. 1988). She claims that this notice triggered a duty to investigate her complaint.

We reject Ms. Keeton's contention that her comment to Mr. Hill constituted notice of her complaint. The record contains an affidavit by Mr. Hill which states that "at no time did she ever make known to me any complaints that she might have concerning sexual harassment. Specifically, I never heard her state that she was 'sick' of any comments." At her deposition, Ms. Keeton admitted that she was unsure that Mr. Hill had heard her. She has presented no evidence to counter Mr. Hill's sworn statement. In any event, Ms. Keeton was aware that the company's sexual harassment policy listed individuals other than Mr. Hill as the proper person with whom to file complaints.

Moreover, her reliance on *Hollis* is misplaced. *Hollis* was issued years before the Supreme Court released the *Ellerth* or *Faragher* cases recognizing the affirmative defense at issue here.

Ms. Keeton also asserts that her failure to avail herself of the company's procedure for preventing sexual harassment was not unreasonable in view of the comments made by Mr. Hill and

Mr. Chinander during the training. We do not believe that the statements, assuming they were made, were sufficient, in and of themselves, to make Ms. Keeton's failure to report the alleged sexual harassment reasonable. She never attempted to contact the personnel officers, never informed them of her experiences during the training, and had no reasonable basis for ignoring the company's pledge to investigate and eliminate sexual harassment. While we agree that a good written policy cannot save an employer from liability in the face of facts demonstrating the employer's disregard for the policy or its implementation, Ms. Keeton has simply failed to provide any such facts.

## III.

Accordingly, we affirm the trial court's decision to grant the motion for summary judgment asserted by Arlyn Hill, Tom Chinander, and Cook's Pest Control. This case is remanded for any further proceedings which may be necessary. Costs of this appeal are taxed to the Appellant, Christa L. Keeton, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE