**Reinee HILDEBRANDT,**

v.

**ILLINOIS DEPARTMENT OF NATURAL RESOURCES, Richard Little, Anna May Brown, Stewart Pequignot, and Kirby Cottrell.**

No. 98–3313.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 20, 2001.

vision of Defendant Illinois Department of Natural Resources (DNR).[1] She claims she has been discriminated against because of her gender. She claims that DNR violated her rights under Title VII of the Civil Rights Act 1964, 42 U.S.C. § 2000e, and the Equal Pay Act provisions of the Fair Labor Standards Act, 29 U.S.C. § 206(d). She claims the individual Defendants are liable to her under 42 U.S.C. § 1983 for violating her right to equal protection of the law by discriminating against her because of her gender. For the reasons stated below, the Court finds that issues of fact exist only as to the Equal Pay Act claim within the period of the statute of limitations and that portion of the § 1983 claim against Defendant Little that concerns Hildebrandt's 1997 raise. The Motion for Summary Judgment is denied as to these two claims. The motion is allowed as to the remaining claims.

Reinee Hildebrandt came to work for DNR's predecessor agency on June 17, 1991.[2] She earned a Ph.D. in forestry in 1987 from Iowa State University. Prior to coming to the DNR, she was on the forestry faculty at Kansas State University. At DNR, she worked as a program administrator in the forestry division. Her supervisor was Defendant Dick Little, Section Manager, Division of Conservation and Program Development. Little's supervisor in 1991 was State Forester Al Mickelson. In 1992, Defendant Stewart Pequignot became State Forester. Defendant Kirby Cottrell was Director of the Office of Resource Conservation. He supervised Pequignot. Defendant Anna May Brown was Pequignot's secretary and was in charge of the secretarial staff for the forestry division. John Comerio was the Deputy Director of the Department of Natural Resources.

Patricia L. Hayes, Hayes Law Office, Springfield, IL, for plaintiff.

Steven Matrisch, Office of the Attorney General, Assistant Attorney General, Springfield, IL, for defendants.

## ORDER

SCOTT, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment. Plaintiff Reinee Hildebrandt is a program administrator in the Forestry Di-

---

1. Individuals used different titles for this position, including staff forester and program coordinator. The Court will use the term program administrator.

2. At that time, the agency was known as the Department of Conservation. The Department of Conservation and DNR are referred to collectively as DNR.

Little supervised Hildebrandt and three other program administrators: John Sester, Pete Skuba, and Robert Schmoker. Each program administrator oversaw different forestry programs in Illinois: Sester oversaw forest products and utilization; Skuba oversaw fire protection, insect and disease programs, and environmental programs; Schmoker oversaw forest management programs; and Hildebrandt oversaw urban forestry programs. Sester began working for the forestry division in 1955. He became a program administrator in 1966. He has a bachelor's degree in forestry. Skuba began working for the forestry division in 1972. He became a program administrator in 1987. He has a bachelor's degree in forestry. Schmoker began working for the forestry division in 1984. He became a program administrator in 1986. He also has a bachelor's degree in forestry, and has taken some graduate courses in forestry. None of the program administrators supervised any personnel. When read in the light most favorable to Hildebrandt, the evidence indicates that these four individuals performed comparable duties under similar circumstances.

Little and his program staff, including Hildebrandt, were located in Springfield, Illinois. Forestry personnel were also located throughout Illinois. These district foresters were managed by five regional forestry directors. The regional directors reported to David Gillespie, Section Manager for Field Operations. Gillespie reported to Pequignot. On the administrative chart, Gillespie was at the same level as Little.[3]

Hildebrandt claims she has been subject to continual gender discrimination during her employment with DNR. She claims that she has been discriminated against in her working conditions and in her compensation.

When she was hired, Hildebrandt was the second highest paid program administrator: she made $37,120 annually; Sester made $44,755; Skuba made $36,623; and Schmoker made $34,587.[4] The program administrators were salaried, merit compensation employees. They were evaluated annually by Little. The rating scale for merit positions changed over time. Initially, the ratings were: superior, exceeds expectations, meets expectations, needs improvement, and unacceptable. Later, the rating scale changed to: exceptional, accomplished, acceptable, and unacceptable. Little recommended annual raises based on the evaluations and annual budgetary restrictions. Raises became effective annually on July 1, the first day of DNR's fiscal year. Pequignot reviewed Little's evaluations and raise recommendations, but generally did not participate in those evaluations.

By July 1, 1994, Hildebrandt was making less than all three of the other program administrators. She had received no raises for 1992, 1993 or 1994. In 1992, no employee received a raise because of budgetary constraints. In 1993, the other three received raises, but Hildebrandt did not because she received a "needs improvement" overall rating. In 1994, she received a 2% raise, while the other administrators received larger raises, again because she received a "needs improvement" overall rating.

Little states that he gave Hildebrandt the poor evaluations in 1993 and 1994 because she had difficulty organizing her work, she had difficulty working with staff,

---

3. Hildebrandt states that her position is comparable to the regional director position. The Court does not decide this issue because she states an Equal Pay Act claim without reference to these positions. The Court, however, notes that the regional directors supervised personnel, a task program administrators did not perform.

4. These salaries were as of July 1, 1991. The salary figures in this order come from the report of Hildebrandt's expert, Charles Hobson. Other evidence may conflict somewhat with his calculations, but all of the evidence indicates that Hildebrandt became the lowest paid program administrator in 1994, and continues to be the lowest paid.

and he received complaints from Defendant Brown and from two people outside the Division. Hildebrandt has submitted substantial numbers of documents praising her work from a number of outside associations and individuals. She also has submitted the report of an expert witness who opined that the DNR evaluation system was flawed. It is undisputed that the urban forestry program grew during her tenure at DNR.

From July 1, 1994, onward, Hildebrandt has earned less than each of the other three. The parties dispute the percentage raise each program administrator received during years 1995 through 1997, but they agree that in each of those years at least one of the male program administrators received a larger percentage raise than Hildebrandt. In 1997, Hildebrandt, Skuba and Schmoker all received an overall evaluation rating of accomplished, but the two men received a larger percentage raise than she.[5] From 1998 to the present, Hildebrandt's percentage raises have been virtually equal to the other program administrators. In 1998, no employee received a raise due to budget constraints. In 1999 and 2000, the four received either 4.39% or 4.40% raises.

In addition to her salary, Hildebrandt claims she was discriminated against in her working conditions. Hildebrandt has recounted a large number of specific instances over the course of her employment in which she believes someone discriminated against her. One or two of these involve off-color remarks made in her presence. These occurred in 1994 or before. Most of the complaints concern: (1) unfair treatment by her superiors; (2) discriminatory treatment by Anna May Brown and her clerical staff; and (3) unequal treatment by the DNR financial office.

She states that Little required her to submit monthly goals and subjected her to quarterly reviews, while her male counterparts were not subjected to these requirements. Hildebrandt said she often was not allowed to communicate directly with district forestry employees throughout the state; rather, David Gillespie required her to send such communication through him. She states that the other program administrators were not subject to these requirements. David Gillespie once removed a reference to the fact that Hildebrandt had a Ph.D. from an urban forestry program review sent to the U.S. Department of Agriculture. The DNR telephone directories for a time also omitted listings for various urban forestry programs.

Hildebrandt also created a newsletter called the Prairie Tree Companion. DNR employee John Allen evidently took over the production of the newsletter. He did not always use the materials she submitted. She was not always given the chance to review the newsletter. On occasions, Brown gave the newsletter to Pequignot, Little and Dave Gillespie to review before Hildebrandt had an opportunity to review it. She would have to ask for a copy of the letter. Defendant Cottrell decided to put the letter on a Web page in 1999–2000. The year 2000 volumes of the newsletter were never allowed to be published.

Hildebrandt states that Defendants Little and Brown denied her adequate staff support. Further, many staff workers, especially Brown, were disrespectful to her. Sester had a secretary assigned to him full-time. The other three administrators gave their work to Brown who then allocated it among the remaining clerical staff. For the first several years that Hildebrandt worked at DNR, Brown routed much of Hildebrandt's work to Myrna Hamilton. Hamilton was suffering from terminal cancer at the time. From the

5. Defendants claim that Skuba received a 6% raise; Schmoker received 4% raise; Hildebrandt received a 3.55 % raise; and Sester received 3% raise. Hildebrandt claims that Skuba received 7.8% raise; Schmoker received 4.4% raise; she received a 3.56% raise; and Sester received 3.01% raise.

record, it appears that she died around June 1, 1997, but the record does not indicate when she stopped working. Hildebrandt states that Brown and Hamilton treated her coldly, while they gave the male administrators "warm fuzzy" comments. Hamilton yelled at Hildebrandt in 1994 and was not reprimanded. Hildebrandt generally typed her draft letters; Brown states that Hamilton was upset by this. Hamilton believed this violated union rules. Brown and Little sometimes made stylistic changes to Hildebrandt's letters without her consent. Brown states that she often changed the format of Hildebrandt's letters. Brown sometimes signed Hildebrandt's letters without Hildebrandt's consent. This unauthorized signing stopped some time in 1995. Brown also signed letters for other administrators.

According to Hildebrandt, Little and Brown have tried to "thwart and bottleneck" her work. She states that she found them holding on to her work instead of moving it forward. Brown, according to Hildebrandt, gave her work lower priority when allocating it to clerical staff. Hildebrandt states that Brown and her support staff took seven to twelve days to complete form letters processed through their stations.

Hildebrandt says that she was not allowed to work with interns as extensively as the other program administrators. She also claims she was denied computer equipment. On several occasions, Hildebrandt states that Brown and others were assigned to assist Hildebrandt in setting up and taking down displays and tables at various conferences held throughout the state. Hildebrandt states that often Brown and others refused to help her perform these tasks.

Hildebrandt says that the level of her staff support since 1991 has been diminished by over 50%. She says that she is forced to perform most of her own clerical work. She states that male program administrators are still given support staff

assistance for their programs. In her deposition, however, Hildebrandt states that she has been happy with her last two secretaries, Joan Ori and Maribeth Guthrie.

Hildebrandt also had several other clerical personnel assist her after Hamilton and before Guthrie. In 1998, Beth Cox (or Fignitti after a divorce) was assigned to help her. The staff who assisted her before that included Donna Farrell, Gina Pogua (Hildebrandt was unsure of the last name), and Denise (Hildebrandt was unsure of her last name). Hildebrandt complained that Cox was also the office receptionist and so did not have enough time to process Hildebrandt's work. Brown concurred in this assessment. Hildebrandt identified few, if any, problems with Donna, Gina, and Denise.

Hildebrandt also claims that she was discriminated against on several occasions through unfair or slow reimbursement processing. She states that in 1993, she was not reimbursed for part of her hotel bills for trips she took as part of her work. In the mid 1990s, she was not reimbursed for mints she bought for a conference. She also complains that urban forestry program vouchers were not processed as quickly as rural forestry program vouchers. She states that the person in charge of such vouchers said the rural program vouchers had higher priority because they involve private landowners rather than government entities.

The Defendants dispute Hildebrandt's claims of discriminatory treatment. They assert she received the same quality of staff support as the other program administrators. They further claim that most of her problems arose from her poor planning and her inability to work with clerical staff.

Hildebrandt, however, perceived her difficulties to be the result of gender discrimination. She began complaining about her treatment almost immediately. Beginning in 1992, she complained to Little. She

states that she got no results. In 1993 or 1994, she requested an audience with Director Manning. She was refused such a meeting. Hildebrandt asked the Illinois Central Management Services (CMS) in 1995 or 1996 to provide her with information about her salary and the salaries of the other three program administrators. She received information on their salaries for the years 1992 to 1995. At this time she learned that her pay had fallen behind the other three. Hildebrandt claims that Little told her that she had not received raises because money was not available for raises.

In the fall of 1996, she complained about the inequitable salaries and asked to speak with DNR Director Brent Manning. She was directed to Defendant Cottrell. Defendant Cottrell, according to Hildebrandt, asked her to start with a clean slate. Hildebrandt said she couldn't start with a clean slate because she was already behind. Hildebrandt states that she has continued to report and oppose her discriminatory treatment formally to Director Manning, and to Defendants Cottrell, Pequignot, and Little.

Eventually on June 16, 1997, Hildebrandt filed an internal charge of discrimination with DNR's Equal Employment Opportunity Officer Teresa Cummings. Cummings investigated. On March 18, 1998, Cummings issued a report in which she found that Hildebrandt was treated differently. Cummings stated,

> After reviewing all materials there is definitely a different treatment of a staff person because she is not one of the established office persons and she stays to herself. A personality conflict has developed which is interfering with the quality and quantity of work.

. . . . .

> In reviewing the personnel files there were differences in the percentage of increase for the same level of performance the same year. The dates of the evaluations are different, but done in the same fiscal year. The range is from 3.55%–6% which causes the salary range to be $3640–$4421 for similar positions in the same section.

Cummings recommended new procedures for support staff, "so that personalities will not cause a hostile environment in which there is not quality work." She also recommended that Hildebrandt's salary and evaluations be reviewed for a salary adjustment.

On March 31, 1998, Comerio held a meeting to discuss Hildebrandt's complaints. Hildebrandt, Cummings, Little, Cottrell and Pequignot were present. Comerio states that he informed Hildebrandt that there had been a determination that no discrimination occurred. He states that the determination was based on the opinions of Hildebrandt's superiors who disagreed with Cummings' conclusions. Cummings states that Comerio said that the Director had approved Cummings' recommendations. The parties agree that Cummings' suggestion for a salary adjustment was not implemented. On May 6, 1998, Hildebrandt filed a charge of discrimination with the Equal Employment Opportunity Commission. She subsequently received a right to sue letter. She filed this action on December 29, 1998.

Hildebrandt also claims that after she filed the charge of discrimination, the Defendants retaliated against her. In particular, she says that Pequignot attended her annual evaluation after she filed the charge. He did not attend any other evaluation. Further, at the evaluation, Little suggested that Hildebrandt cut back on her travel. He said something to the effect that the she could spend more time with her family. She said that the statement was sex discrimination. At that point, Little told her that she could continue to travel at her current level. Skuba states in his affidavit that, in 1995 or 1996, Little suggested that he cutback on travel in order to spend more time with his family. Hildebrandt also cites additional instances in which she did not re-

ceive adequate staff support and that her reimbursement requests were handled in an unreasonably slow manner. She states, however, that after she filed her complaint, the Defendants did not change her duties, reduce her pay, demote her or discipline her.

Hildebrandt claims the Defendants discriminated against her because of her gender. She claims DNR violated the Equal Pay Act and Title VII. Her Title VII claims allege discrimination in compensation, discrimination in her work environment, and retaliation. She claims that the individual Defendants discriminated against her because of her gender in violation of § 1983. The Defendants argue that most of Hildebrandt's complaints are barred by the statutes of limitations. They further claim that they are entitled to qualified immunity on the § 1983 claims and that the undisputed facts do not support her other claims.

## ANALYSIS

At summary judgment, the Defendants must present evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider the evidence presented in the light most favorable to Hildebrandt. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the Defendants have produced evidence showing that they are entitled to summary judgment, Hildebrandt must present evidence to show that issues of fact remain. *Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 576, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). With two exceptions, Hildebrandt has failed to meet her burden.

■ The individual Defendants are entitled to qualified immunity on Hildebrandt's claims of gender discrimination based on her treatment at the workplace (other than

compensation). The Defendants are entitled to qualified immunity if no precedent had been established that denying staff support, inequitable treatment by management of the type shown here, or slow reimbursement constituted gender determination. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Hildebrandt has the burden to present such precedent to the Court. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988). Hildebrandt has cited no such case to this Court. She has thus failed to meet her burden. The Defendants are entitled to summary judgment on all § 1983 claims based on Hildebrandt's treatment at the workplace unrelated to her compensation.

■ The Court further agrees that the statute of limitations bar many of Hildebrandt's other claims. Hildebrandt's Title VII claim is limited to the 300 day period immediately preceding the day on which she filed the charge of discrimination. 42 U.S.C. § 2000e–5(e). The § 1983 compensation claims are subject to the Illinois two-year statute of limitations for personal injuries. *Pearson v. Gatto,* 933 F.2d 521, 525 n. 3 (7th Cir.1991). The Equal Pay Act claim is subject to a two year statute of limitations unless the violation was willful, in which case the statute is three years. 29 U.S.C. § 255(a).

The 300 day statute bars Hildebrandt's Title VII compensation discrimination claim. Hildebrandt filed her charge of discrimination on May 6, 1998. July 10, 1997, is the date 300 days prior to the filing of the charge. Hildebrandt must show some adverse employment action taken against her after that date. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). She cannot. After that date, she received the same or virtually the same percentage raise as the other program administrators. *See Dasgupta v. University of Wisconsin Board of Regents,* 121 F.3d 1138, 1140 (7th Cir.1997) (proportionate raises are not dis-

criminatory). She thus does not state a claim under Title VII for compensation discrimination.

■ The 300 day statute also limits Hildebrandt's claim of a discriminatory work environment to acts that occurred after July 10, 1997. Most of Hildebrandt's complaints concern actions taken by Brown and Hamilton prior to that date. The acts that she documents after that date do not constitute a discriminatory work environment. To be discriminatory, the workplace must be so permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. Instances of non-severe discrimination do not establish a hostile work environment. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1453 (7th Cir.1994). The severity of the actions must be judged from both an objective and subjective viewpoint. *Id.* at 1454. Hildebrandt's list of inequities in staff support, micromanagement and reimbursement that occurred after July 10, 1997, may be annoying and unfair, but they do not show a level of hostility that equal a sexually hostile work environment when considered from an objective viewpoint.

■ Similarly, the § 1983 two-year statute bars any claims for discrimination in compensation that occurred prior to December 29, 1996. After that date, the only unequal treatment respecting compensation occurred on July 1, 1997, when Hildebrandt received the same rating as Skuba and Schmoker, but received a lower percentage raise than either of them. This inequity, combined with the disputed claims regarding Little's treatment of Hildebrandt, create an issue of fact concerning whether he intentionally gave her a smaller raise because of her gender. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 944–45 (7th Cir.1996). She, therefore, may proceed against Little under § 1983, but only with respect to her July 1, 1997, raise. She can only proceed against Little because he was the only Defendant who directly participated in this possibly discriminatory act. Section 1983 liability requires direct participation. *E.g., Rizzo v. Goode*, 423 U.S. 362, 375–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

■ Hildebrandt's Equal Pay Act claim is limited to the period after December 29, 1996, or, if she can prove willful discrimination, after December 29, 1995. She told Little, Cottrell and others that she believed she was being discriminated against in her compensation. The Defendants' refusal thereafter to adjust her salary could support the conclusion that the Defendants were on notice, but willfully decided to discriminate against her. *Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir.1995). If a jury so found, the statute would be three years.

Defendants argue that the differences in pay were due to legitimate factors other than gender, including seniority and DNR's merit compensation system. Defendants have the burden to establish these claims as an affirmative defense. 29 U.S.C. § 206(d)(1)(i)-(iv). Hildebrandt has submitted voluminous evidence indicating that she administered a high-quality urban forestry program. She also submitted an expert opinion challenging the validity of DNR's merit compensation system. This evidence creates an issue of fact concerning whether DNR can prove its affirmative defense. Hildebrandt may proceed on the Equal Pay Act claim for the time period of the applicable statute of limitations.

■ Hildebrandt argues that her claims should not be barred because at the 1998 meeting, and other times within the statute, the Defendants failed to correct the effects of past discrimination. She argues that these actions constitute new, separate acts of discrimination. The Seventh Circuit has rejected this argument. *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1140 (7th Cir.1997). Hildebrandt must not show

merely the effect of past discrimination during the limitations period, but an actual discriminatory act. With the exceptions discussed above, she has not done so.

 Hildebrandt also argues the continuing violation doctrine should allow her to bring in all the discriminatory acts that occurred prior to the statute of limitations. The continuing violation doctrine allows victims to wait before bringing actions until enough instances of discriminatory conduct have occurred to give the plaintiff a basis to believe that she was a victim of illegal discrimination. *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1139 (7th Cir.1997). Once she has enough information to form this belief, the statute starts to run, and she is not entitled to wait before asserting her claim. *Id.* at 1141.

 Here, Hildebrandt believed in 1992 that she was subject to discrimination in her working conditions. She continually complained about and opposed the acts that she viewed as discriminatory. Hildebrandt also knew in 1995 or 1996 that she was being paid less than the other program administrators. At that time she secured salary information for all the program administrators for the years 1992 through 1995. In the fall of 1996, she asked for a meeting with Director Manning to complain about the pay inequities. She thus knew she had a claim at that time. She cannot revive that claim under a continuing violation theory. *Id.*

Hildebrandt argues that she did not discover all the facts constituting her claim until Cummings issued her report in 1998. Again, the Court disagrees. She knew about the pay inequities in 1995 or 1996; she complained about her working conditions continually. She had enough information to assert all of her claims of discrimination by the fall of 1996. She did not file until December 29, 1998. She cannot argue discovery as a basis for tolling the statute.

 The discovery doctrine and the continuing violation doctrine also do not apply to Equal Pay Act cases. *Pollis v. New School for Social Research*, 132 F.3d 115, 117 (2d Cir.1997). Rather, she is entitled to pursue a claim for the unequal pay to which she was subjected during the period of the applicable statute of limitations.

 Finally, Hildebrandt has failed to establish a Title VII retaliation claim. To establish a claim for retaliation, Hildebrandt must prove an adverse employment action. *Hill v. American General Finance Inc.*, 218 F.3d 639, 645 (7th Cir.2000). An adverse employment action means discharge, demotion, a decrease in benefits or pay, or relegation to a significantly lesser job. *Id.* None of these occurred. She, therefore, does not have a retaliation claim.

Therefore, the Defendants' Motion for Summary Judgment (d/e 63) is ALLOWED in part and DENIED in part. The motion is denied as to Count VII for claims of unequal pay from December 29, 1996, forward, or if Hildebrandt can prove willful discrimination, from December 29, 1995, forward. The motion is also denied as to that portion of Count I that alleges that Defendant Little discriminated against Hildebrandt by recommending that she receive a smaller raise on July 1, 1997, than the other two program administrators who received the same merit rating as she. The motion is granted as to all other claims set forth in the Complaint, including all other claims against Defendant Little. Defendants Anna May Brown, Stuart Pequignot, and Kirby Cottrell are dismissed from this action.

IT IS THEREFORE SO ORDERED.